Carey *v.* Gnant.

New trial granted.

[FIRST DEPARTMENT, GENERAL TERM, at New York, June 6, 1871. *Cardozo* and *Geo. G. Barnard,* Justices.]

---

## CAREY *vs.* GNANT.

The plaintiff, an attorney, agreed to prosecute an action of ejectment to a final judgment, in favor of the defendant, and to put him in possession of the property; and the defendant agreed to pay him, for his services, $10,000. To secure the payment of that sum, a judgment by confession was entered, within four days. An action of ejectment was commenced by the plaintiff, in the name of the defendant, but before trial the parties to that suit compromised their differences. *Held* that the plaintiff could not enforce his judgment for the full amount thereof; the work contracted for not having been performed, in full.

But that as the judgment was at any rate security for whatever sum was due to the plaintiff, it would not be proper to set it aside. Proceedings under it were directed to be stayed, however, until the amount due to the plaintiff from the defendant should be ascertained, either by a reference, or in an action upon the agreement.

APPEAL by the plaintiff from an order made at a special term.

The plaintiff, who is an attorney and counselor of this court, obtained from the defendant, who was, at the time the judgment was obtained, his client, a judgment by confession, which was predicated upon an agreement prepared by the plaintiff, on the same day, by which the defendant

Carey *v.* Gnant.

agreed to pay said plaintiff $10,000 if the plaintiff prosecuted to final judgment an action of ejectment, which he agreed to bring, and which he agreed should be successful, and that the defendant should be put in possession of the premises.

The action was commenced, and on the calendar for trial, when the same was settled between the defendant, Gnant, and Anton Hüpfel, the owner of the property described in the action of ejectment. After the settlement, the plaintiff issued execution on the judgment by confession, and the defendant moved to set aside the judgment, and obtained a stay of proceedings on the execution. The court refused to set aside the judgment, but continued the stay, and made an order of reference to ascertain and report the amount due the plaintiff, for his services rendered in said action; and for his expenses and disbursements therein, and any damage to which he might be entitled on his contract, if any, by reason of the compromise of the ejectment suit. From this order the plaintiff appealed.

The following opinion was delivered at the special term.

INGRAHAM, J. The agreement between the parties was that the defendant should give the plaintiff $10,000 if he prosecuted a claim to lands, &c., in Westchester, recovered the same, and put the defendant in possession of the property, and to secure payment thereof, a judgment by confession was entered within four days thereafter for that sum. The parties, before trial, compromised their differences.

The plaintiff now claims to enforce the judgment for the whole amount.

I am at a loss to see on what ground the plaintiff can recover the amount of the judgment. The parties compromised their differences before the trial. For all services rendered to that time, the plaintiff is entitled to be paid,

Carey *v.* Gnant.

and the amount agreed upon for all the services to be rendered may form the measure of damages in proportion to the service rendered. The contract did not require the defendant to continue the litigation at all events, and even if it did, it is very doubtful whether the plaintiff could claim the whole sum, if the contract was broken. The rule in regard to executory contracts is, that either party may refuse performance, and the damages to be recovered are not to be the contract price if performed, and the damages sustained by the breach of the contract. (*Clark* v. *Marsiglia,* 1 *Denio,* 317.) It is very clear that there was nothing due when the judgment was confessed, and it is equally clear that the work contracted for had not been performed. If it should appear that the defendant could in no event recover, he would not, under the contract, be required to continue a useless litigation, and it would be equally unjust to require him to pay to the plaintiff the sum agreed upon as compensation in the event of success. In such a case the plaintiff would be entitled to receive pay for the service rendered, but not the whole amount which was to be paid if successful in the litigation. I prefer to put the decision of this motion on the general principle applicable, rather than to advert to the personal matters which have been urged on the argument of the motion. These principles to which I have adverted, are, in my judgment, amply sufficient for the decision of it.

I see no objection to the parties making this motion, viz., the defendant, Gnant, with whom the agreement was made, and Hüpfel, the owner now of the premises on which the judgment is a lien. If that judgment is to be considered as a mere security, then the owner of the land affected by it is certainly not bound to pay more thereon than the defendant himself is liable for; but whether or not, he could alone make this motion, I think there can be no doubt of the defendant's right so to do.

As the judgment, however, is at any rate security for

Carey *v.* Gnant.

whatever is due to the plaintiff, it would not be proper to set it aside.

In the case of *Marsh* v. *Holbrook*, Court of Appeals, in the opinion of Judge JAMES,(a) it is said the plaintiff was entitled to recover the sum agreed on as compensation; but, in that case, the party in reality succeeded in his recovery, and received within $10,000 of the whole claim.

(*a*) That opinion was the prevailing opinion, and is as follows:

JAMES, J. The appellants first point is that the referee erred in excluding the evidence offered by the defendants of the value of the plaintiff's services, and to render a judgment upon an issue not made by the pleadings.

By the Code all forms of pleading were abolished, except as prescribed by that act. A plain and concise statement of the facts upon which the party relies, is all that is now required. This complaint, after stating the character of the parties, the employment, its nature and the condition of the subject matter, avers the value of the services to be $5000, and that the defendants promised and agreed to pay that sum therefor.

The complaint is not therefore strictly upon the *quantum meruit;* it is equally a count for a specific sum agreed to be paid. Therefore proof of such agreement was not inconsistent with the complaint; neither was it a variance. And when the plaintiff withdrew all claim upon the *quantum meruit*, and claimed to recover upon a special agreement for the service, the actual value of the services rendered became wholly immaterial; that question was no longer in the case, and it was not error then to reject the defendants' offer to prove value.

There was no claim on the trial that the defendants had been misled by the plaintiffs being permitted to prove a special agreement for the services claimed in the action, or, by the rejection of their offer to prove the value of such services. Therefore if there was any variance between the allegations in the pleadings and the proof, it was not material, (*Code,* § 169;) and even now, if necessary, this court might, by order, conform the pleading to the fact proved, because the claim is not substantially changed. (*Code,* § 173.)

I most fully concur with the defendant's counsel that this contract should be construed with reference to the subject and the situation. What the defendants wanted was their pay. In seeking it they had been defeated and mulcted in over $1200 costs. They then sought the services of the plaintiff, and agreed if he would undertake their case and succeeded, he should be paid $5000. Such is the fact as found by the referee; and his findings being conclusive, they constitute the facts upon which the rights of the parties must here be determined.

It was said in *Thompson* v. *Kessel*, (30 *N. Y.* 383,) that when the testimony before a referee is conflicting upon all the material points involved in the action,

Carey *v.* Gnant.

The party having succeeded, was in equity bound to pay; but where a recovery is doubtful, I think a different rule must be adopted.

The plaintiff must be stayed from taking any proceedings on the judgment, until the amount due him from the defendant has been ascertained. This may be done by a reference, or the plaintiff may bring an action to recover

and the court, at general term, has affirmed the judgment, the Court of Appeals cannot look into the testimony to determine whether the facts are found according to the weight of evidence. (*See also Bergin* v. *Wemple, id.* 319.) This branch of the case, therefore, stands upon the basis that the plaintiff rendered the services sued for upon a special offer of compensation made at the time of the employment. Entering upon the service was an acceptance of that offer; and the offer and its acceptance constituted a valid agreement, supported by a sufficient consideration. Since the adoption of the Code there is nothing to prevent an attorney from agreeing with his client as to the amount and terms of his compensation. In this case, the plaintiff's compensation was dependent upon success; that success was only contemplated through the prosecution of the action between the defendants and their opponent, and it is morally certain that no settlement would have been proposed but for the plaintiff's efforts and partial success in prosecuting said action.

The defendants, by their agreement with the plaintiff, were not debarred from settling and discontinuing said action; but in doing so they only terminated that litigation; they did not put an end to their contract with the plaintiff. The plaintiff having performed on his part, until stopped by the defendants, is entitled to full indemnity—is entitled to recover precisely what he would have made by performance. (*Masterton* v. *Mayor of Brooklyn,* 7 *Hill,* 75, *and cases cited.*) I think the rule is, where performance is arrested and prevented by the act or omission of one party, the other has the election either to treat the contract as rescinded, and recover on the *quantum meruit* the value of the services rendered, or work performed; or to sue upon the contract and recover for what has been done, at the stipulated price, and for the loss in profits or otherwise, sustained by the operation. This was the rule upon which *Jones* v. *Judd,* (4 *N. Y.* 412,) was decided; although upon that question this court was equally divided.

It is a general rule that a party injured by a breach of contract is entitled to recover, not only all his damages, but also all gains prevented, if the gains were such as would have accrued to him from the contract itself, had it been performed. (*Clark* v. *The Mayor, &c.,* 3 *Barb.* 288 *to* 291. *Davis* v. *Talcott,* 14 *Barb.* 611.)

The principle of allowing profits is now well established. (*See Shepard* v. *Milwaukee,* 15 *Wis.* 318. *Hinckley* v. *Beckwith,* 13 *id.* 31. *P. W. and B. R. R.*

Carey *v.* Gnant.

the amount due him on the contract. Upon such recovery, the payment may be enforced by proceeding upon this judgment.

*L. R. Marsh,* for the appellant.

I. It is entirely competent and legal for attorney and client to agree as to the amount of compensation to be paid the former, and to make the amount dependent on the success or recovery in the particular case. (*Code,* § 303. *Rooney* v. *Second Av. R. R. Co.,* 18 *N. Y.* 368. *Ely* v. *Cooke,* 28 *id.* 365. *Marsh* v. *Holbrook, Ct. of Appeals, not yet reported.*)

II. Here, the defendant shows he made such an agreement. He claims it was with Van Pelt; but he made the agreement. It was explained to him, i. e., that it secured Van Pelt $10,000 when the defendant should get his property; he was to pay nothing till then; this was its effect. It was a security on the property to be recovered. On that alone. For Gnant had no other property. He understood then, perfectly, the precise effect of the judg-

---

v. *Howard,* 13 *How.* 307, 344. *Hay* v. *Gronoble, Penn.* 9. *Sedg.* 98, 4th *ed.* *Fat* v. *Harding,* 7 *Cush.* 576.)

In cases where there is to be an outlay to earn the sum stipulated, if completion is prevented, such outlay, if not made, should be deducted, in order to determine the profits; but in this case there is no such consideration; here no outlay or expense was to be incurred; the sum agreed upon was the measure of profits, had the contract been performed; and its performance is pronounced when performance has been prevented by the interference of the other party, and hence the sum agreed is equally the measure of damages. (*Costigan* v. *Mohawk and H. R. R. Co.,* 2 *Denio,* 609.)

The referee, in adjusting the plaintiff's recovery, apportioned it as the amount received bore to the amount claimed. This, within the principles above stated, was as favorable as the defendants could ask. They claimed $66,000; they agreed to give the plaintiff $5000 if he should succeed in recovering it; the plaintiff had partially succeeded, and was diligently prosecuting the work when the defendants arrested his proceedings and accepted $56,000. Clearly the rule of damages applied was manifestly equitable and just.

Judgment affirmed.

ment. He was not deceived as to the effect of the paper. There is no pretense of that.

III. The defendant says the suit is not determined; but is still pending. Then let him wait till it is, before he makes his motion. Certainly, he cannot move to set aside the judgment on the ground that he has not recovered the property, if the action for its recovery is still pending. But he has availed himself of the benefit of the plaintiff's services; then, by his own act, he has put it out of the power of the plaintiff to perform. (*See Marsh* v. *Holbrook*, *Ct. of Appeals; Hill* v. *Cunningham, Texas R., see N. Y. Transcript for April 5, p. 5.*) He cannot thus cheat his lawyer. It clearly appears that the settlement between Gnant and Hüpfel was made surreptitiously, and without the knowledge and consent of Carey; and the rule is, that when a party to a contract prevents its completion by the other party, the one ready to complete is entitled to recover what he would have made by performance; in other words, he is entitled to all profits that he would have made by full completion. "The party who is ready to perform is entitled to a full indemnity for the loss of his contract. He should not be made to suffer by the delinquency of the other party, but ought to recover precisely what he would have made by performance." (*Masterton* v. *Mayor &c. of Brooklyn*, 7 *Hill*, 61, 75.) To the same effect is *Jones* v. *Judd*, (4 *N. Y.* 412,) where the court say: "When the completion of a job is arrested by the act or omission of the party for whom the work is done, the contractor has an election to treat the contract as rescinded, and recover on a *quantum meruit* the value of his labor, or he may sue upon the agreement, and recover for the work completed at the stipulated price, and for the loss in profits or otherwise sustained by the interruption." And see *Wolfe* v. *Howes*, (20 *N. Y.* 202;) *Clark* v. *Gilbert*, (26 *id.* 279;) *Devlin* v. *Second Av. R. R.*, (44 *Barb.* 81;) *Costigan* v. *Mohawk and Hudson R. R.*, (2 *Denio*, 609.) In

Carey ·v. Gnant.

*Niblo* v. *Binsse,* (1 *Keyes,* 476, 479,) where the plaintiff's assignor was prevented, by the destruction of the building by fire, (though without any fault or act of the owner,) from performing his contract to complete it, this court says: "If any party agrees with another to do work upon his house or other building, the law implies that the employer is to have the building in existence upon which the work contracted for may be done. It is necessarily a part of the contract on the part of said employer, whether it is specified in terms or not." But the case at bar is yet stronger, for the action on which the plaintiff was to do the work was settled, discontinued and put out of existence, not by any extraneous power, but by the act of the defendant himself. And this case is even stronger than the case of *Marsh* v. *Holbrook.* In the latter case it appears that the amount received by the plaintiff's clients was $56,227.12, in settlement for their claim of $67,640.95. In the case at bar the suit is not merely settled and discontinued, but Hüpfel receives a deed from Gnant of the premises in question, thus virtually acknowledging his ownership of the premises, and rendering the suit brought by Carey, not only a partial but a complete success; for after final judgment in the ejectment suit in favor of Gnant, he could have done precisely the same thing. The amount of the consideration he received from Hüpfel was a matter that does not concern the plaintiff, Carey; it could in no way affect his rights under his contract. Gnant had the right to convey the premises for $150,000 or for $1. An attorney contracted with his client for a contingent fee, to depend upon the result of the suit. The client compromised without consulting his attorney. Held, that the attorney was entitled to recover the whole amount of his fee. (*Hill* v. *Cunningham, Texas R.,* see *N. Y. Transcript for April* 5, *p.* 5.)

IV. The judgment is only available as a lien on the land, the subject of that action. If Gnant owns the land,

then he can well afford to carry out his agreement, viz., pay $10,000 for getting $150,000. If Gnant does not own the land, then the judgment does him no harm.

V. A third party—Hüpfel—comes in, and claims to make this motion. It is enough to say he cannot proceed, by motion, in the action, to set the judgment aside. His only remedy would be by bill, to set the judgment aside, as a cloud on his title. He is not a party to the action.

VI. The amount of the compensation was not unreasonable. 1. It was fairly proportioned to the amount involved.

| | |
|---|---:|
| Ejectment for property worth . . . . | $150,000 |
| Mesne profits . . . . . . . . . . | 50,000 |
| | $200,000 |

2. The plaintiff had to take all the risk. Gnant had no money or other property; was not able to advance a dollar, and he so stated. The agreement was that he was not to advance. 3. Carey was to get his pay out of the property sued for, or not at all.

VII. This is stronger than if Carey was suing to recover $10,000, as agreed to be paid. It is a consummated consideration. It is an absolute payment. Suppose Gnant had paid him $10,000 in cash on this agreement, declaring the indebtedness present and absolute, could he, by settling, sue for and recover it back? Yet, that is the nature of this motion.

VIII. The amount of the judgment may seem large in view of the service actually rendered. But it must be remembered that this was a contract. The service which Carey undertook to perform was most important and valuable. He took all the responsibility upon himself. Suppose he had spent years in carrying the case through all the courts, and fairly earned a much larger amount, could he recover one dollar beyond his contract price? Certainly not. The rule then must work both ways, and when Gnant has the full benefit of a successful termina-

tion of the suit in this early stage, he should also be held to the contract price.

*James M. Smith,* for the respondent.

I., By reference to the agreement between the plaintiff and the defendant, it appears that it was an executory contract. If either party refused to perform the contract on his part, he subjected himself to an action, and the measure of damages would be the amount of loss he had sustained by reason of the violation of his agreement. (*See Clark* v. *Marsiglia,* 1 *Denio,* 317; *Sedg. on Damages,* 204, 209–211; *Shannon* v. *Comstock,* 21 *Wend.* 457.) No rule is better settled than this. In actions of contract, damages are strictly limited to the direct pecuniary loss resulting from the breach of the agreement in question.

II. The Code, in extending the rights of attorneys, in allowing them to contract with their clients, as to compensation beyond the allowance given by statute, has not changed the law as to the construction and effect of executory contracts. The Code gives no special privilege to an attorney as a contractor with his client. It simply relieves him of a disability that before existed. It suffers him to make a contract with his client as to compensation. It does not alter the law of executory and executed contracts. (*Code,* § 303.) Previous to the Code, the law was stringent as to dealing between attorney and client. The reason for that supervision by the courts still exists. The Code has in no respect changed it, as to the reasons for · the rule. It simply permits an attorney to make a binding contract with his client for his services, but gives him no advantage over other contractors. (*Story's Eq. Juris.* §§ 311, 312*a*, 312*b*, 312*c* and 312*d*.)

III. "In actions of contract, damages are strictly limited to the direct pecuniary loss resulting from the breach of the agreement in question." (*Sedg. on Damages,* 204, 209.) The amount to be recovered is not the price stipulated to

be paid on full performance, but the actual injury sustained in consequence of the defendant's default—compensation for actual loss. (*Sedg. on Damages*, 209-211.)  In *Shannon* v. *Comstock*, (21 *Wend.* 457, the court say : "In an action to recover damages for the non-performance of a contract, other than for the conveyance of land, the rule of damages is the loss or injury sustained by the party ready and willing to perform, and not the price agreed to be paid on actual performance." In the case* of *Miller* v. *Mariners' Church*, (3 *Greenl.* 51, 55, 56,) Mellen, Ch. J., says : "In general the delinquent party is holden to make good the loss occasioned by the delinquency. But his liability is limited to direct damages, which, according to the nature of the subject, may be contemplated or presumed to result from his failure."

IV. The judgment should have been set aside, for the reason that it does not conform to the requirements of the Code.  (§ 383.)  By the agreement, the plaintiff was to recover for Gnant the possession of the land, &c., and put him in possession thereof.  The record is inconsistent with the agreement upon which the judgment is entered.  It acknowledges a "present and absolute indebtedness," and yet it specifies that such indebtedness depends upon a contingency, which contingency might never happen.  It contains a false recital apparent on its face.  It is not within the 2d subdivision of section 383, for the reason it does not show that the sum is "justly due or to become due."  It certainly is not due, and its becoming due depends on a contingency that may never happen.  It does not come under the 3d subdivision. In order to bring it within that, the record should state that it was given for a contingent liability, and not, as in this case, for a "debt justly due."

V. Even where a judgment has been confessed, the court will, after a great lapse of time, order a reference to ascertain what was justly due.  (*Draper's Company* v. *Davis,*

2 *Atk.* 295.) In that case, Lord Hardwick, chancellor, ordered the judgment canceled, and the securities delivered up.

The order appealed from was more favorable to the plaintiff than it should have been. The appeal should be dismissed, with costs.

*By the Court,* GEO. G. BARNARD, J. I think the order appealed from should be affirmed. All of the points presented by the appellant have been fully covered by the justice who made the order below.

Order affirmed.

[FIRST DEPARTMENT, GENERAL TERM, at New York, June 6, 1871. *Cardozo* and *Geo. G. Barnard,* Justices.]

———•◆•———

59 585
61h 24

THE TRUSTEES OF UNION COLLEGE &c. *vs.* WILLIAM H. WHEELER, Executor &c., and others.

An assignee of a mortgage is a purchaser, and if a *bona fide* purchaser, is not chargeable with his assignor's notice of incumbrances upon, or estates in, the mortgaged premises.

Though *possession* of land is notice to all the world of the possessor's interest, the definition of the word *possession* is restricted to an actual, open, visible occupancy, accompanied by improvement of the premises.

Fencing, pasturing, cutting and selling timber, and clearing part of the premises, do not constitute such possession.

Where, prior to January 1, 1830, the purchase money of land was paid equally by A., S. and N., but a deed of the whole was taken by A. alone, who, after that date, conveyed an undivided two-thirds to S., and the premises were sebsequently, by A. and S., contracted to be sold in parcels to various parties under whom the defendants claimed, and who paid portions of the purchase money to A. and S.; and before deeds were given, N. quit-claimed to S. his interest in the premises and took back from S. a mortgage, which was subsequently assigned by N. to the plaintiff, who had no notice of the contracts, and paid value; *Held,* on foreclosure,

1. That a trust resulted to N. in one-third of the land.

2. That the trust was not divested by the conveyance to S. though subsequent