## MARSH *v.* HOLBROOK.

### September, 1869.

In an action to recover compensation for services, if the complaint alleges, and the plaintiff at the trial solely relies on, an express promise to pay a specified sum, the defendants are not entitled to prove that the value of the services was less, although the complaint contain allegations appropriate to an action on a *quantum meruit*.

Where an attorney has agreed to prosecute an action for a compensation to be contingent on success, and is diligently prosecuting it, the client cannot, by settling the action without his consent, deprive him of his right to compensation. On a settlement so made, the attorney is at least entitled to be paid in proportion to the sum received by the client in settlement of the action.[*]

*It seems*, that he might recover the full compensation agreed.

---

[*] Compare Cummins *v.* Barkalow, vol. 1 of this series, p. 479; and Ely *v.* Spofford, 22 *Barb.* 231, Ogden *v.* Des Arts, 4 *Duer*, 275; Satterlee *v.* Jones, 3 *Id.* 102; quoted there in note. For the rule as between master and servant, see Moody *v.* Leverich, 14 *Abb. Pr. N. S.*

See also, Case *v.* Hotchkiss, vol. 1, p. 324 of this series, where it was held, that in an action by an attorney, retained to conduct a cause pending on appeal, for compensation for the services employed, evidence that there were in fact no merits in the case he was engaged to present, is irrelevant. As to the attorney's negligence, see Bowman *v.* Tallman, in note at the end of the principal case.

Luther R. Marsh sued Lowell Holbrook, in the New York common pleas, as surviving partner of Thomas S. Nelson, deceased, to recover for professional services rendered by plaintiff to the firm of Holbrook & Nelson.

The plaintiff was an attorney and counselor of the supreme court, and was retained by Holbrook & Nelson to prosecute an action already pending on their behalf, against Francis G. Vose and others; and at the time of so retaining and employing him, Holbrook & Nelson promised and agreed with him that they would pay him the sum of five thousand dollars "if he got the case."

The amount involved was fifty thousand dollars and interest, less a credit of two thousand five hundred dollars.

The total amount which Holbrook & Nelson would have recovered, if successful, was over sixty-six thousand dollars; but, in March, 1863, Holbrook, on his own responsibility, and without the consent of his attorney, effected a settlement for a sum a little over fifty-six thousand dollars.

The referee found, that on the faith of the promises and retainer of the defendant, the plaintiff did well and diligently, and at the expense of much skill and labor, prosecute the action, up to the time when Holbrook settled it. He found, as matter of law, that Holbrook & Nelson did succeed in and get the case, but not as completely as it was possible to do so, but in the proportion of the fifty-six thousand dollars to sixty-six thousand dollars; and he accordingly found, that the plaintiff was entitled to recover a corresponding proportion of the sum of five thousand dollars promised him—viz: four thousand two hundred and twenty dollars and eighty-four cents.

The complaint, the frame of which is alluded to in the opinion, after alleging that plaintiff was an attorney and that defendant was surviving partner, &c., alleged the retainer, the amount involved in the action pending, the rendering of services and disbursements by plaintiff according to the employment, and the settlement by Holbrook, and that plaintiff's services and disbursements were well and reasonably worth the sum of five thousand dollars, and that Holbrook & Nelson promised and agreed to pay that sum.

The evidence showed no written contract, but verbal

promises to pay the sum specified in case plaintiff " should suc-
ceed in the case," or " get the case."

Defendants called witnesses to prove the reasonable worth of
the services of an attorney and counsel in prosecuting such an
action. This evidence was excluded on plaintiff's objection,
plaintiff avowing that he claimed only on a special agreement
and abandoned the other part of the action as to the value of
the services.

*The common pleas*, without rendering any written opinion,
affirmed the judgment entered in favor of plaintiff upon the
report of the referee, and the defendant appealed to this court.

The main question on this appeal was, whether cases of this
class were within the doctrine of Jones *v.* Judd, and Clark *v.*
Gilbert, or whether, since it did not appear positively that the
plaintiff would have been able to perform and attain success,
he did not fail in this action for want of proof of a condition
precedent.

*George F. Comstock*, for defendant, appellant.

*Marsh, Coe & Wallis*, attorneys for plaintiff, respondent.

JAMES, J.—The appellant's first point is, that the referee
erred in excluding the evidence offered by the defendants of the
value of the plaintiff's services, and in rendering a judgment
upon an issue not made by the pleadings.

By the Code, all forms of pleadings were abolished, except
as prescribed by that act. A plain and concise statement of
the facts upon which the party relies, is all that is now re-
quired. This complaint, after stating the character of the
parties, the employment, its nature, and the condition of the
subject matter, avers the value of the services to be five thou-
sand dollars, and that the defendant promised and agreed to
pay that sum therefor.

The complaint is not, therefore, strictly upon the *quantum
meruit*; it is equally a count for a specific sum agreed to be
paid. Therefore, proof of such agreement was not inconsistent
.with the complaint; neither was it a variance. And when the

plaintiff withdrew all claim upon the *quantum meruit*, and claimed to recover upon a special agreement for the service, the actual value of the services rendered became wholly immaterial; that question was no longer in the case, and it was not error then to reject the defendants' offer to prove value.

There was no claim on the trial that the defendants had been misled by the plaintiff's being permitted to prove a special agreement for the services claimed in the action, or by the rejection of their offer to prove the value of such services. Therefore, if there was any variance between the allegations in the pleadings and the proofs, it was not material (*Code of Pro.* § 169); and even now, if necessary, this court might, by order, confirm the pleading to the fact proved, because the claim is not substantially changed. *Id.* § 173.

I most fully concur with the defendant's counsel, that this contract should be construed with reference to the subject and the situation. What the defendants wanted was their pay. In seeking it they had been defeated and mulcted in over one thousand two hundred dollars, costs. They then sought the services of the plaintiff, and agreed, if he would take their case, and succeeded, he should be paid five thousand dollars. Such is the fact as found by the referee; and his findings being conclusive, they constitute the facts upon which the rights of the parties must here be determined.

. It was said in Thompson v. Kessel, 30 *N. Y.* 383, that when the testimony before a referee is conflicting upon all the material points involved in the action, and the court at general term has affirmed the judgment, the court of appeals cannot look into the testimony to determine whether the facts found are found according to the weight of evidence. See, also, Bergin v Wemple,* *Id.* 319. This branch of the case, therefore, stands upon the basis that the plaintiff rendered the services sued for upon a special offer of compensation made at the time of the employment. Entering upon the service was an acceptance of that order; and the offer and its acceptance constituted a valid agreement, supported by a sufficient consideration.

Since the adoption of the Code, there is nothing to prevent

---

* Followed in Baldwin v. Van Deusen, 37 *N. Y.* 487.

an attorney from agreeing with his client as to the amount and terms of his compensation. In this case, the plaintiff's compensation was dependent upon success; that success was only contemplated through the prosecution of the action between the defendants and their opponent; and it is morally certain that no settlement would have been proposed, but for the plaintiff's efforts and partial success in prosecuting said action.

The defendants by their agreement with the plaintiff, were not debarred from settling and discontinuing said action; but in doing so, they only terminated that litigation; they did not put an end to their contract with the plaintiff. The plaintiff, having performed on his part until stopped by the defendants, is entitled to full indemnity—is entitled to recover precisely what he would have made by performance. Masterton v. Mayor of Brooklyn, 7 *Hill*, 61, 75, and cases cited. I think the rule is, that where performance is arrested and prevented by the act or omission of one party, the other has the election either to treat the contract as rescinded, and recover on the *quantum meruit* the value of the services rendered, or work performed, or to sue upon the contract and recover for what has been done, at the stipulated price, and for the loss, in profits or otherwise, sustained by the operation. This was the rule upon which Jones v. Judd, 4 *N. Y.* (4 *Comst.*) 412, was decided, although upon that question this court was equally divided.

It is a general rule that a party injured by a breach of contract is entitled to recover, not only all his damages, but also all gains prevented, if the gains were such as would have accrued to him from the contract itself, had it been performed. Clark v. Mayor,* &c., 3 *Barb.* 288; Davis v. Talcott, 14 *Id.* 611.

The principle of allowing profits is now well established. See Shephard v. Milwaukee, 15 *Wis.* 318; Hinckley v. Beck-

---

* Clark v. Mayor, &c. was reversed in the court of appeals (4 *N. Y.* [4 *Comst.*] 338), on the ground that, although the doctrine above stated is the true rule in the case of an action upon the contract, for its breach, it is not applicable where the contractor treats the contract as rescinded, and sues merely on a *quantum meruit*, for work, &c. done. In that case, the actual value is the measure of damages; in the case in the text, it will be observed, the recovery was on the contract.

with, 13 *Id.* 31; Philadelphia, W. & B. R. R. *v.* Howard, 13 *How. U. S.* 307, 344; *Sedg. on Dam.* 3rd ed., p. 75; Fox *v.* Harding, 7 *Cush.* 576.

In cases where there is to be an outlay to earn the sum stipulated, if completion is prevented, such outlay, if not made, should be deducted, in order to determine the profits; but in this case there is no such consideration; here no outlay or expense was to be incurred; the sum agreed upon was the measure of profits, had the contract been performed; and its performance is pronounced when performance has been prevented by the interference of the other party; and hence the sum agreed is equally the measure of damages. Costigan *v.* Mohawk & H. R. R. Co., 2 *Den.* 609.

The referee, in adjusting the plaintiff's recovery, apportioned, it as the amount received bore to the amount claimed. This within the principles above stated, was as favorable as the defendants could ask. They claimed sixty-six thousand dollars; they agreed to give the plaintiff five thousand dollars if he should succeed in recovering it; the plaintiff had partially succeeded, and was diligently prosecuting the work, when the defendants arrested his proceedings and accepted fifty-six thousand dollars. Clearly the rule of damages applied was manifestly equitable and just.

WOODRUFF, J., was of opinion that the defendants had no right to deprive the plaintiff of the opportunity of succeeding in the suit, and evade liability for compensation, on the ground that success was not certain. The plaintiff had a right to insist that, according to the mutual agreement of the parties, and by its just implication, success was possible; and that this was enough, under the circumstances, to entitle the plaintiff to recover at the contract rate of compensation, at least *pro rata;* and that obviously no more equitable apportionment could be made than that which the referee adopted, viz: to require payment in proportion to the sum recovered. Whether the plaintiff was not entitled to recover the whole contract price, it was unnecessary to consider, as he had not appealed from the judgment.

In this opinion MASON, J., was understood to concur.

MURRAY and HUNT, JJ., also concurred, except that they were further of opinion that there was substantial success, and that plaintiff would be entitled to recover the whole contract price.

GROVER and DANIELS, JJ., dissented.

Judgment affirmed, with costs.*

## MARTIN v. COPE.

### June, 1863.

A contract for sale of a " carding machine and fulling mill," and " all the fixtures belonging to the fulling mill and carding machine," should not

---

* In BOWMAN v. TALLMAN, June, 1869 (affirming 2 Robt. 385; S. C., 27 How. Pr. 212), it was held, that the mere fact that an attorney's services produced no beneficial result to his client, through his erroneous advice, does not preclude him from claiming compensation. The extent of the rule on this point is, that he has no claim for compensation when the services in question were useless to the client by reason of negligence or want of proper skill in the attorney. Hence, where the attorney advised his client, that on a devise to infants of a vested estate subject to open and let in after-born children, the supreme court had power, under the statute relating to infants' estates, to authorize a sale,—this being a question on which the court of last resort had been divided,—and, pursuant to this advice, he effected a sale which was afterwards adjudged void,— Held, that the error in his advice did not deprive him of his right to compensation.

George Bowman sued William M. Tallman, in the New York superior court, to recover for professional services of plaintiff as an attorney and counselor, rendered to defendant in respect to the estate of his father, under whose will defendant was an executor and trustee.

The will of the testator was such that the fee of lands was vested in infants and others, and liable to open and let in children yet unborn. The plaintiff, being consulted and employed by defendant, advised applying to the supreme court for leave to sell, under the statute empowering that court to authorize a sale of infants' property. He accordingly took this course, and effected a sale; but two successive purchasers each refused to complete his purchase, on the ground that they were advised that, on an application under the statute in question, the court had not power (as they have in partition), to bind persons yet unborn, and cut off

be construed as including as fixtures those only which were annexed to the building at the time of sale; but may, by the aid of extrinsic evidence, be construed as including machinery which had been detached and removed without supplying its place.

The rule requiring minutes of testimony given on a former trial by a witness since deceased, to present not his meaning, merely, but his language, in order to be admissible to be read on a subsequent trial, does not require the precise words, but substantially the language.*

Joseph Sibley (for whom, on his decease, Robert Martin and Jane Sibley, administrators, were substituted as plaintiffs) sued David Cope for alleged conversion of a carding machine.

At the second trial, Judge BUCHAN, county judge in 1845, before whom a previous trial had been had, was called as a witness to state what testimony had then been given by one Bristol, a witness, since deceased. Judge BUCHAN said, "I can, by looking at my minutes, state what the testimony of Bristol was; I have a general recollection of his testimony; I recollect the point to which his testimony was directed. I took, at the time, careful minutes of his testimony. I think the notes of

the possibility of such an interest arising. In the litigation that ensued, the supreme court held the sale ineffectual for this reason; and the plaintiff then abandoned the proceedings, and brought partition, which was effectual.

The principal part of the plaintiff's claim in the present action, was for costs in the nugatory proceedings under the statute.

*The superior court* held, that the evidence on the trial showed a personal retainer by defendant, which rendered him personally liable, although his only interest was in his capacity as executor and trustee; and were also of opinion that the supreme court were wrong in their construction of the statute, and the plaintiff, therefore, was not chargeable with negligence.

From judgment for plaintiff (reported in 2 *Robt.* 385; S. C., less fully, 27 *How. Pr.* 212), defendant appealed.

*Elbridge T. Gerry*, for defendant, appellant.

*John H. Reynolds*, for plaintiff, respondent.

WOODRUFF, J.—In Godfrey v. Dalton, 6 *Bing.* 460; 4 *M. & P.* 149, in

* See also Halsey v. Sinsebaugh, 15 *N. Y.* 485; McIntyre v. N. Y. Central R. R. Co., 37 *Id.* 287; and Graham v. Chrystal, vol. 2 of this series.

the testimony taken by me on that occasion are correct, and contain substantially the language used by the witness." On cross-examination Judge BUCHAN said he sometimes took Bristol's words and sometimes used his own words to express Bristol's ideas. Under exception the judge was allowed to read his minutes.

The main question on the merits was, whether Sibley, by a contract of sale of his farm to defendant, "together with all the fixtures belonging to the fulling mill and carding machine," passed the title to a carding machine, &c., which, previous to the sale, had been taken out of the building on the farm used and known as "the carding machine" or "fulling mill," and had been stored in another building.

*The supreme court* held, that if the machine had been permanently removed from the building on an abandonment of the business, the contract of sale could not, as matter of construction, be held to include it. Under this instruction the

the English court of common pleas, TINDAL, Chief Justice, says: "It would be extremely difficult to define the exact limit by which the skill and diligence which an attorney undertakes to furnish in the conduct of a case is bounded; or, to trace precisely the dividing line between that reasonable skill and diligence which appears to satisfy his undertaking, and that *crassa negligentia*, or *lata culpa*, mentioned in some of the cases, for which he is undoubtedly responsible.

The cases, however, which have been cited and commented upon at the bar, appear to establish in general that he is liable for the consequences of ignorance or non-observance of care in the preparation of the cause for trial; or of attendance thereon with his witnesses; and for the mismanagement of so much of the conduct of the cause as is usually and ordinarily allotted to his department of the profession; whilst, on the other hand, he is not liable for error in judgment upon points of new occurrence, or of nice or doubtful construction, or of such as are usually intrusted to men in the higher branch of the profession of the law."

In the application of these views the court held, that the attorney was not responsible for neglecting to produce a judgment record as evidence of a previous judgment by default on the trial of a cause, from an erroneous conception or belief that the book of the prothonotary, in which was kept an entry of the judgments by default, signed in each term, was competent evidence to establish the fact. And in Kemp *v.* Burt, 4 *Barn. & Ald.* 424; S. C., 1 *Nev. & M.* 262, attorneys were held

Martin v. Cope.

jury had found for plaintiff at the trial, and the court held the instruction to be correct, although they were of opinion that the rule would have been otherwise if the removal had been

not liable in a case where there was doubt whether the course they pursued was not correct; and the plain inference from the language of the court is, that to subject them to an action, they must have been guilty of gross negligence.

In Lanphire v. Phipos, 8 *Carr. & P.* 475, at *nisi prius*, TINDAL, Chief Justice, instructed the jury in some general rules applicable to professional men in general, thus: "What you will have to say is this,— whether you are satisfied that the injury sustained (by the plaintiff) is attributable to the want of a reasonable and proper degree of care and skill in the defendant's treatment. Every person who enters into a learned profession undertakes to bring to the exercise of it a reasonable and proper degree of care and skill. He does not undertake, if he is an attorney, that at all events you shall gain your cause, nor does a surgeon undertake that he will perform a cure; nor does he undertake to use the highest possible degree of skill. There may be persons who have a higher education and greater advantages than he has; but he undertakes to bring a fair, reasonable, and competent degree of skill," &c.

In actions brought by the attorney to recover the value of his services, another element has been brought into view. Thus, in Montriow v. Jefferys, 2 *Carr. & P.* 113; S. C., *R. & M.* 317, also at *nisi prius*, ABBOTT, Ch. J., instructed the jury, where there was some evidence that the facts and the law applicable thereto were known to the attorney, and yet the proper steps for his client's protection in a proceeding before two county magistrates were not taken: "The real question upon this evidence is, whether you think that the expense was brought upon the parties by the *inadvertence* of the plaintiff. No attorney is bound to know all the law. God forbid that it should be imagined that an attorney, or a counsel, or even a judge, is bound to know all the law; or that an attorney is to lose his fair recompense on account of an error, being such an error as a cautious man might fall into. But if you think in this case, that the plaintiff has brought all the expense on the parties by his omitting to give proper information, either to them or to the justices, you will, under that impression, find your verdict for the defendant."

In several cases cited in notes to this case (in 12 *Eng. Com. Law*, 52), the proposition is recognized that, in an action for the value of the services of an attorney, if it be shown that by reason of the plaintiff's negligence the services have been of no value to his client, he can recover nothing. Some general expressions might easily be supposed to import the broader proposition, that wherever the service has been of no value to the client, there can be no recovery; but it is clear, I think, that no such broad proposition is held or intended; the observation of Chief Justice ABBOTT forbids any such idea.

temporary, with intent to replace the machine and operate it in the building.

Defendant moved, on exceptions, for a new trial, which was denied, and judgment affirmed.

In Hill v. Featherstonhaugh, 7 *Bing.* 569 ; S. C., 5 *M. & P.* 541, the attorney had been employed to secure his client by preventing a transfer of a bank stock, and to that end put a *distringas* upon the stock. There was some evidence that a previous *distringas* had been issued ; in consequence, the second *distringas*, issued by the attorney, was unnecessary for the client's security. It was left to the jury to consider whether the work done was of any use to the defendant, and whether they could infer (from the evidence), that the plaintiff knew of a previous *distringas*, and had advised a second. On the review, Chief Justice TINDAL says : " I have always thought that if an attorney, *through inadvertence* or *inexperience*, incurs trouble which is useless to his client, he cannot make it the subject of remuneration, the meaning of which is, a reward for useful labor," &c. " It seemed clear to me that the plaintiff had acted with full knowledge of the former *distringas*, and I left it to the jury to say, whether they would infer that the plaintiff had advised the second *distringas*, and *was aware* of the first ; and then comes the question, whether the second *distringas* was of any use, &c. ; it was for the jury to say whether it was useless to the defendant, and *whether the plaintiff knew it to be so*, when it appeared by the correspondence that he had seen the solicitor of the bank before he proceeded."

GASELY says, a client is entitled to expect the exercise of competent skill ; the attorney has not an unlimited discretion, and is not to pursue a course which will be manifestly useless to his employer. The question here was, whether the business done was necessary for accomplishing the object which the defendant had in view when he retained the plaintiff. The other judges state the question to be simply whether what was done was necessary for the object the employer had in view. But, I think it manifest upon the whole case, that this narrowing of the question was upon the clear assumption, that, if the work done was useless, the attorney must have known it to be so.

The language cited from BAYLEY, J., in Duncan v. Blundell, 3 *Stark. N. P.* 6, that " where a person is employed in a work of skill, the employer buys both his labor and his judgment ; he ought not to undertake the work if it cannot succeed ; and he *should know* whether it will or not," is far too harsh to be true without qualification. It would make an attorney the guarantor of success in every prosecution he advises and undertakes, and in every defense which by his advice is interposed ; no such rule could be endured by a profession in which one or other of the parties to every litigation must fail. And the illustration of ALDERSON, J., in the case above cited (Hill v. Featherstonhaugh), better states the

*G. G. Munger,* for defendant, appellant ;—Insisted that the words of the deceased witness must be given, not their substance or effect. Pyke *v.* Crouch, 1 *Ld. Raym.* 730 ; Rex *v.* Joliffe, 4 *T. R.* 285, 290 ; Doncaster *v.* Day, 3 *Taunt.* 262 ; Wilbur *v.*

extent of the rule acted upon : "In the case of a medical man, if an operation *which might have* been useful, has merely failed in the event, he is nevertheless entitled to charge ; but if it could have been useful in *no event,* he would have no claim on the patient."

The decision in the last case was again reiterated in a case in which the court deemed the verdict against the weight of evidence, but in which they were, on the review, confined to the mere inquiry whether the jury were properly instructed (Shaw *v.* Arden, 9 *Bing.* 287 ; S. C., 2 *M. & Scott,* 341), and the question is stated to have been " whether the work was necessary for the plaintiff (the client), or was entered on from the defendants' own zeal, and a view of making business for their own advantage ; that it was useless to the plaintiff appears from the result ; the result alone would not, indeed, be conclusive to show that it was improperly undertaken, but that was a question for the jury on which the evidence was conflicting."

And in Bracey *v.* Carter, 12 *Ad. & E.* 373 ; 40 *Eng. Com. Law,* 74, the rule deducible from these cases is found in the proposition that " if an attorney, conducting a suit, commits an act of negligence by which all the previous steps become useless in the result, he cannot recover for any part of the business done."

This collection and statement of the cases in England, most of which have been cited and relied upon by the counsel for the appellant, shows that they are no authority for the claim that the plaintiff is not entitled to compensation for his services on the mere ground that they produced no beneficial result.

The extent of the rule is that when the services for which compensation is claimed are useless to the client, by reason of the negligence or the want of proper skill in the attorney, then the latter is entitled to no compensation.

The question, therefore, recurs : did the case now before us disclose such negligence or want of skill ? For it seems to me to be clear, that the fruitless endeavors to dispose of the real estate to which the services related, were of no value in fact to the defendant, or to those for whose benefit the proceedings were taken.

No testimony was given on the trial by any expert in the law, for the purpose of proving, as a fact in the case, that the plaintiff, in advising the proceedings, acted unskillfully, or that he did not in good faith exercise a fair judgment upon the question to which his advice was directed, or even that the opinion by which he was governed in the institution and carrying on of the proceeding was not correct.

Martin v. Cope.

Selden, 6 *Cow.* 162; Clark *v.* Vorce, 15 *Wend.* 193; Huff *v.* Bennett, 6 *N. Y.* 337; Commonwealth *v.* Richards, 18 *Pick.* 434; Warren *v.* Nichols, 6 *Metc.* 261.   And as to the merits, cited James *v.* Bostwick, *Wright (O.)* 142; Lowber *v.* Le Roy, 2 *Sandf.* 202; Teaff *v.* Hewitt, 1 *Ohio St.* 511; Murdock *v.* Gifford, 18 *N. Y.* 28.

*Joseph A. Stull,* for plaintiffs, respondents.

BALCOM, J.—Joseph Sibley, now deceased, and the defendant,

The result, and the views of the court upon the law, were, therefore, the guide of the court, on the trial below, to a determination of the question.

The correctness of the advice given, and therefore the propriety and wisdom of the course pursued by the attorney for the accomplishment of his client's wishes, viz: a sale of the property, depended upon the construction of a will, and also upon the force and effect of a statute.

It had not been authoritatively decided, that a proceeding for the sale of infants' lands under the statute, would not be effectual to pass a perfect title, where the fee, vested in such infants, was liable to open and let in persons yet unborn.   An opinion had been expressed in the court of last resort, that such a sale would be effectual to pass a good title to the purchaser; a counter opinion had also been expressed, but other of the judges had refused to express an opinion on the point.

It was a fair question for consideration and for the exercise of professional judgment.   The analogy of the rule, in case of partition and sale under the jurisdiction and power of the court of chancery, was not remote or irrelevant.   In my judgment, the brief used in the proceeding taken by the plaintiff, and found in the case before us, shows that the plaintiff's views could be and were sustained by fair argument upon the construction of the statute, its purpose and design ; and the analogy referred to, and the peculiar situation of the property itself, appealed strongly to the court to give to the statute such liberal construction as would tend to facilitate a sale, plainly demanded by the interest of the infants in being, and of any who might thereafter be born.

However clear I may be, that the proceeding was rightfully held, in the supreme court, ineffectual to pass to the purcheser a perfect title, I do not think that the question was so plain that to have thought otherwise, and to have acted on that opinion, was a failure to exercise that reasonable care and skill which the attorney is bound to exercise, within the cases above referred to.   It is of some significance, and the members of the profession have a right so to regard it, that a difference of opinion on the point had already appeared in the highest court in the State, and the point was there left undecided.

To hold that the plaintiff was proved wanting in reasonable professional skill, because he adopted and acted upon one side of the question thus left open, would be a most oppressive rule to the legal profession, and often require them, at the peril of actions for damages, or at least of loss of all compensation, to be wiser and more skillful than those whose duty it is to declare the law.

As to the question whether the defendant was personally liable for the services in question, the case was put to the jury under instructions highly favorable to the defendant, and they have in substance found that the defendant intended to be personally liable for the plaintiff's compensation, or, in other words, that he agreed to pay therefor. There was testimony in the cause from which that might reasonably be inferred. Indeed, an employment to render services, in general, involves the liability of the employer to make compensation, unless he shows on his part that the understanding or agreement was otherwise. It may, it is true, be inferred from the terms of the employment or known *authority* of the party to act for, and bind others to such payment.

There was no error in leaving the question to the jury, and, we have, therefore, no jurisdiction to review their finding.

Whatever I might conclude, upon the merits of the whole case, if I were sitting to try the action upon all the issues, I do not perceive that any error in law was committed for which the judgment should be reversed; it must, therefore, be affirmed.

DANIELS, J., also read an opinion for affirmance.

All the judges concurred in affirming the judgment.

Judgment affirmed, with costs.

Consult, also, Stokes *v.* Tremper, 2 *Kay & J.* 232; Long *v.* Orsi, 18 *C. B.* 610; 26 *L. J. C. P.* 127; Fletcher *v.* Winter, 3 *Fost. & F.* 138; see also, 2 *Id.* 642, 407