**Albert N. Eastman, Appellee, v. John W. Blackledge et al., Appellants.**

**Gen. No. 17,112.**

1. JOINT ADVENTURES—*liability for services performed.* Persons about to purchase and consolidate certain canning plants agreed to pay to an attorney for legal services a certain per cent. of all stocks and bonds issued by a company to be formed. The company was formed and the stocks and bonds delivered to the attorney who substantially complied with his contract. Stock dividends and bond interest was credited in the company's books to the promoters, who made a settlement with the company and received dividends and interest that should have been paid the attorney. *Held,* the attorney was entitled to recover such dividends and interest from the promoters.

2. ATTORNEY AND CLIENT—*compensation when performance prevented by client.* An attorney employed to do certain legal work may recover the agreed compensation though part of the work was performed by another where he performed all the work he was permitted to perform.

Appeal from the Municipal Court of Chicago; the Hon. EDWIN K. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed June 14, 1912.

LYNDEN EVANS, CLARK SCAMMON REED, HENRY S. McAULEY and THOMAS M. HEADEN, for appellants.

EASTMAN & WHITE, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

Judgment was had in favor of appellee and against

appellants jointly, for the amount of certain dividends upon shares of the capital stock and interest upon certain bonds, both issued by the Wisconsin Pea Canners' Company, and both belonging, as claimed, to the appellee.

The contention of appellee is that appellant caused the amount of such dividends and such interest to be credited to their account on the books of the company, and that afterwards a settlement was made with the company; that the legal effect of the conduct of appellants was a conversion to their own use of the amount for which judgment was rendered.

The case was tried before the court without a jury, and numerous findings were requested by the appellee and by the appellant Blackledge.

The essential facts are not in dispute but appellant Gillett claims that there should have been no recovery, first, because the obligation was not one for which appellants were jointly liable; second, because appellee had not performed his contract; third, because he was not the owner of the bonds at the time the interest was alleged to have been paid to appellants, nor the owner of the stock when the dividends were declared. It is further claimed that the acceptance of the note made by the company to the appellant Gillett, hereinafter referred to, was not a payment of the indebtedness evidenced thereby; that the appellants did not receive money or anything of value for the use of the appellant, and that if appellee was the owner of the bonds and stock his cause of action was against the corporation and not against appellants.

The contention of appellant Blackledge is that the plaintiff's proofs do not support his pleadings, and that under the evidence the suit was prematurely brought.

In 1906 the appellants, Blackledge and Gillett, were interested in a joint venture to purchase and consolidate certain pea canning plants in the State of Wisconsin. On September 7th of that year appellant

Blackledge entered into a contract with the appellee whereby appellee was to do the necessary legal work in connection with the purchase of the property, the formation of a company, etc., and was to receive in payment for his services 2½ per cent. of all stock, bonds or other securities issued by the company to be formed, in addition to his expenses for hotel bills, railroad fare, etc. On July 13, 1906, and May 13, 1907, contracts were entered into between the appellant Gillett and the appellant Blackledge with reference to the promotion of the Wisconsin Pea Cannners' Company and the division of the profits to be derived therefrom. On July 12, 1907, a supplemental agreement was made between the appellants, which provided for the payment of a monthly salary to Blackledge; the advancing of money necessary to carry on the sale of stock and the promotion of the corporation by Gillett; that Gillett was to have the possession and control of all stock, bonds or securities that both or either of the appellants were entitled to; that Gillett should have the right to dispose of the securities at the minimum price of 80 per cent. of the face value of the preferred stock, an equal amount of common stock to be given as a bonus, and 80 per cent. of the face value of the bonds. The contract further provided that out of the proceeds to be derived from the sale of the securities there should first be deducted and paid to Gillett, with 5 per cent. interest, all advances made by him as payment or partial payment of the purchase price of two additional plants, known as the Landreth and Vandreuil plants; that there should be charged against the residue and paid to Gillett all other advances made by him in the promotion of the company, with interest thereon at 5 per cent.; that the balance of the profits then remaining, either in stock, bonds, cash or other securities, should be divided between the appellants, two-fifths to Blackledge and three-fifths to Gillett. Gillett agreed that he would assume and be bound by all contracts for commission and prices for securities

made by Blackledge, including appellee's (Eastman's) compensation.

The court found that in pursuance of the joint undertaking of the appellants the Wisconsin Pea Canners' Company was organized in 1907, with an authorized capitalization of $750,000 of preferred and $600,000 of common stock, and an authorized issue of $200,000 in bonds; that by the contract above referred to the control of the stock and bonds was vested in Gillett by Blackledge for their joint benefit, and subject to the terms and conditions of the existing contract with appellee, and with his knowledge; that appellee had performed, and stood ready and able to perform, his contract in pursuance of this joint venture; that the company issued its total capitalization of 75,000 shares of preferred stock and 60,000 shares of common stock (each of the par value of $10 per share), and $200,000 par value of bonds; that 1,875 shares of the preferred, 1,600 shares of the common, and $5,000 par value of the bonds had been delivered by appellants to appellee; that in September and October, 1907, 1,875 shares of preferred stock were by the appellants voluntarily directed to be issued and registered in the name of appellee, and that they so continued to remain until December, 1908; that between September 1, 1907, and December 1, 1908, dividends to the amount of 12½ per cent. were paid by the company upon its entire issue of preferred stock, and that dividends upon the stock issued to Eastman were "paid and credited to the joint account of" appellants; that the interest on the bonds of appellee was also credited to the joint account of Blackledge and Gillett; that no portion of the first five dividends so declared upon the preferred stock or the interest on the bonds was ever paid to Eastman. The court further found that the necessary legal work connected with the turning over to the company of the property purchased from the Lambreth Company was not done by the appellee.

While the findings of the court are perhaps not entirely harmonious, we think the conclusion reached was that there had been a substantial compliance by the appellee of his contract with Blackledge, and that by the contract between Blackledge and Gillett the latter agreed to turn over to the appellee the securities to which under the contract with Blackledge the appellee was entitled. We think it also apparent from the evidence that a joint account with Blackledge and Gillett was kept on the books of the company, and that this was done in pursuance of the contract between them, heretofore referred to; that up to the time that the manual delivery of the stock and bonds was made to appellee, the same were kept in the possession of the officers of the company, but that they were issued at the instance of Gillett and with the consent of Blackledge to Eastman at a time when there had been a substantial compliance of his contract by the appellee; that there was an adjustment as to the matter of dividends and bond interest between the company and Gillett, and that in this settlement Gillett received the dividends upon stock and interest upon the bonds which properly should have been paid to the appellee.

It is true the court found that appellee did not perform the necessary work connected with the purchase of the property of the Lambreth Company in its entirety, but that it appeared the work was performed by another. We think it clear that he did perform all of the work that he was permitted to perform in that matter and that for reasons not definitely stated, but which it may be inferred were due to differences between the parties, Mr. Gillett preferred to have some other attorney look after the matter, and so relieved Mr. Eastman of further duties in the premises.

It is apparent that by the control of the securities Mr. Gillett was in control of the affairs of the company. By his actions he prevented the payment to appellee of dividends upon the stock and interest on the bonds. As heretofore stated, the amount of these divi-

dends and the interest was credited to the joint account of Gillett and Blackledge. In the settlement which he made with the company Gillett must be regarded as having acted for himself and Blackledge jointly. We think the judgment entered in this case is warranted by the pleadings and the proofs, and deem it unnecessary to comment further upon the various points raised in the briefs and arguments of counsel. The judgment will be affirmed.

*Affirmed.*