In the Matter of the Estate of JAMES H. MONTGOMERY, Deceased.

Surrogate's Court, Monroe County, September 9, 1935.

*William MacFarlane*, for the petitioner.

*N. J. Weldgen*, for the respondent.

FEELY, S.   On this application by a client, under section 231-a of the Surrogate's Court Act, to have this court fix the compensation of her sometime attorney, and order him to turn over to petitioner as executrix such papers now in his hands as belong to the estate of the above-named testator, it was shown that on May 28, 1934, the attorney and the executrix agreed in writing that he should do all the legal work necessary to liquidate the estate of testator before February 1, 1935, for the sum of $5,000.   This included the services he had already rendered to that end since the death of testator on November 22, 1933.

The value of the estate, as set out in the tax deposition, was $613,782 and the net estate now is about $355,543.   The executor's commissions will be about $9,700.   On such an estate the ordinary work contemplated in the contract would be reasonably worth $10,000 at the very least.

On December 14, 1934, the client, without adequate cause, but in the due exercise of her " implied " legal rights as a client, discharged said attorney, who up to that time had substantially performed the contract on his part, in so far as he had been allowed to go. He had then done about five-sixths of the agreed work. His offer to complete, under the supervision of the substituted attorney, was declined. Computed on a general basis, independently of the contract, the reasonable value of the attorney's services up to the discharge is found to be $13,000; and likewise computed, the reasonable value of the legal service necessary to bring this estate through judicial settlement from its stage at the date of the discharge of the first attorney, is found to be $1,500. The respondent's claim that he is now entitled to recover in *quantum meruit* the $13,000 presents the main question, whether the independent reasonable value, even in excess of the agreed price of $5,000, can be allowed, notwithstanding it be for only a part of the agreed work. Does " reasonable value " here mean the part's value estimated independently of the contract, or does it mean the proportionate contract value of the part performed? As neither party has " breached " this contract, must the contract be regarded as stripped of all legal effect whatsoever, solely by reason of the client, in good faith, having duly exercised the " implied " option therein to have the service stop at the given time?

On this point in the law of damages some confusion has been occasioned by the different methods of recompensing that have been adopted, especially in cases where the service under a contingent fee retainer has been interrupted. Almost everywhere, as a general rule, there is read into the contract engaging the service of an attorney at law a peculiar implication that, as Judge THOMAS observed (161 App. Div. 611), has not been deemed to characterize any other profession furnishing like intimate, confidential, personal service. This implication is that the client can, at will and without any cause, order the lawyer to desist from further performance of their contract; but the time element is important. As this right was impliedly reserved, the exercise of it, in good faith, where the lawyer is not at fault, leaves the contract standing unbreached. In cases where the retainer is conditioned on success, this further complication is added. When it comes down to estimating the results of such discharge by the client, the rulings on the manner of compensating the attorney differ with the circumstances; and much more frequently in the contingent fee cases than in any others.

As this theory came to be subjected to a varied application in practice, the attempts to justify the unusual results that naturally flowed from it, led to some statements in the opinions which, by

generality or looseness of expression, added to the confusion by their excessive broadness — such as that by the discharge the contract was " rescinded," " abrogated," or " cancelled;" and was no longer a " measure," or the " sole standard " of compensation; and that the discharge relegated the lawyer to a recovery in *"quantum meruit,"* thereby implying the general rule that on breach a recovery in *quantum meruit* may, in some cases, exceed the agreed price. Stronger than its fellows among those broad expressions of " rescission " is one that, like them, relates only to the contingent fee cases — and not accurately at that — and this is that the contract " either wholly stands or totally falls," and " cannot be partially abrogated;" all of which must be read in the light of the continuing difference there seems to have been between the lower courts on one side and the highest court on the other, in that the latter has steadily refused to condition the *quantum meruit* on the ultimate result, whereas the lower courts, even as late as *Kaplowitz* v. *Brooklyn Bus Corp.* ([1934] 242 App. Div. 840), have generally made the award abide the event. They seem to ask, Why should not the unbreached contract still control? " The intention of the parties is not that the attorney absolutely and in any event should receive as compensation one quarter of the amount of the claim " (*Roake* v. *Palmer*, 119 App. Div. 64); nor did they intend that he should be paid in full if there was a substitution. (Id.) Quite distinctive of the case at bar, however, is the fact that here the parties intended the lawyer should be paid in any event, if he were not at fault, and this distinguishing feature seems to be sustained as such by a survey of the decisions.

The New York cases have not all been consistent one with another; and no case squarely in point has been found; but it seems fairly inferable from the decisions at large that the case of the contingent fee differs radically from that of the absolute or fixed fee; and that where the discharge of the attorney is made in good faith, it leaves the contract stand unbreached; whereas a discharge so timed as to be presumptively fraudulent is really a breach of the contract, and has been acted upon regularly as such, according to the general rule of damages, although such discharge has not been expressly labeled a " breach " as it should have been; and finally, that even in the contingent fee cases — and a *fortiori* in the fixed or absolute fee cases also — the retainer contract remains effective, as far as possible, after a *bona fide* discharge; and thus fixes the largest sum that may be recovered in any case or event.

In support of those inferences, it may be helpful to note first that in those New York cases which are, more or less, in accord with the majority rule, no recovery has exceeded the contract price.

This attorney would be held down to the contract or less in the several jurisdictions that have passed on such matters. (L. R. A. 1917F, pp. 402, 413.) Some would hold under the ordinary rules of damages that $5,000 would be the value of his contract; others that the reasonable value of his services up to the discharge was to be limited by the contract price; because a recovery for interrupted performance of such service, although based on reasonable value, could not in any event exceed the contract price. (*Hunt* v. *Test*, 8 Ala. 713; *Smith* v. *Thompson*, [Tex. Civ. App.] 233 S. W. 876; *Brodie* v. *Watkins*, 33 Ark. 545; *Bell County Bd. of Ed.* v. *Lee*, 239 Ky. 317; 39 S. W. [2d] 492; *American Surety Co.* v. *Fruin-Bambrick Co.*, 182 Mo. App. 667; 166 S. W. 333; *Henry* v. *Vance*, 111 Ky. 72; 63 S. W. 273.)

The degree to which the work had progressed before the discharge is also a factor. Where there was but a small part of the work done, the rule would be to estimate the value of the services rendered and those to be rendered; and allow the contract price abated by such sum as reasonably represents the unperformed part of the labor. A similar result was reached in *Bassford* v. *White* (61 N. Y. Super. Ct. 457; affd., 139 N. Y. 616), and mentioned in *Ransom* v. *Ransom* (70 Misc. 30), each of which will be discussed in another connection.

In *Friedman* v. *Mindlin* (91 Misc. 473 [City Ct. N. Y.]) the attorney was discharged, without cause, for urging a settlement which the client did not approve; and he was awarded his agreed percentage on any recovery that might be had.

Where the agreed work has been substantially performed, or has been in effect regarded by the client as completed, as in the settlement cases discussed below, the measure of damages has been held in the lower courts to be the full contract price (*Bermant* v. *Keveney*, 88 Misc. 527; affd., 170 App. Div. 898); but it will appear that a somewhat modified form of such ruling has obtained.

So, in *Graut* v. *Longley* (34 Misc. 776), it was held that when an attorney is retained for a particular case, and is prematurely discharged, without cause, the measure of damages is the stipulated compensation, where the client did not attempt to prove that the plaintiff would incur expenses in the performance of his duties.

Considering the disparity in the case at bar between the $5,000 agreed price and the $13,000 " market " value of the part performance, one's sense of justice is surprised at the possibility of a recovery for the reasonable value of part of the agreed work in a sum twice as great as the agreed price of the whole work. One inclines rather to the rule embodied in the California Code that forbids the recovery of damages in a sum greater than could have been had on full performance.

The third class of cases is that wherein " nothing " (except perhaps, thinking and avoiding rashness) had been done by the lawyer up to the time he was discharged; and there the controlling effect of the contract having fixed a price is illustrated in an Ohio case where an attorney was retained to collect a claim, but was discharged before he had done " anything " under his retainer. On proof that the claim was collectible, he was awarded the contract price. (*Scheinesohn* v. *Lemonek*, 84 Ohio St. 424; 95 N. E. 913.) There the court said: " The value of the attorney's anticipated services had been fixed by the agreement of the parties. In the absence of any other ascertained rule of damage why may not this sum be taken as the one nearest in contemplation of the parties, and the one nearest to a fair solution? "

A like ruling was made in New York in the case of *Carlisle* v. *Barnes* (102 App. Div. 573; appeal dismissed, 183 N. Y. 567), where an attorney was retained to prosecute certain claims for five per cent of the amount collected, but was then not allowed by the client to proceed to collect. Another attorney then collected the claims. It was held that the first attorney was entitled to recover his five per cent agreed upon, whether such percentage be called his " compensation," or " the value of the contract," or " profit." The court there said: " This action is not on a *quantum meruit*. The plaintiff was not required to prove what work he actually performed. There was a special contract, and a breach, and the action is for a specific amount of damage, for an agreed sum, resulting from that breach."

This theory was discussed in the majority opinion in *Mason* v. *Camp* (161 App. Div. 611; revd., 219 N. Y. 170, *infra*). It was applied in *Hollander* v. *Kaufman* (172 App. Div. 218) and in *Werner* v. *Knowlton* (107 id. 158), denying consideration by the jury of reasonable value in an action upon an express contract, fully performed.

In this third class, where nothing has been done, probably belongs on the facts the case of *Graut* v. *Langley* (*supra*) and also the case of *Bassford* v. *White* (*supra*). In the latter an attorney had been retained to have the defendant's street assessments reduced, or the award increased; and for his services he was to receive one-quarter of the amount saved to the defendant. The trial judge, MCADAM, wrote: " Before any services were rendered the plaintiff's authority was revoked. Under such circumstances the plaintiff became entitled, not to the full reward to be paid on successful performance of the contract by him, but to the losses sustained or gains prevented by the breach." At General Term (47 N. Y. St. Repr. 936) it was held " that the rule of damage applicable to this case

was properly stated by the learned trial judge." The Court of Appeals (139 N. Y. 616) merely affirmed. The attorney became entitled, then, at least to the agreed compensation less the fair value of the services and disbursements necessary to complete what he had undertaken to do.

There is another class of cases in which the emphasis falls on the effect of complete performance, or its equivalent in the settlement cases. In *Friedman* v. *Mindlin* (91 Misc. 473) the court said that where the contract of retainer fixed the amount of the attorney's compensation for services and he has not offended either through misconduct or neglect, the court is without power to reduce the amount fixed by the contract when the client has dismissed, or applies for leave to change his attorney; and further that a contract by which an attorney undertakes to conduct a litigation is entire; and so long as the attorney observes good faith, he will be protected by the courts in his contractual rights.

The ruling in *Matter of Makames* (148 Misc. 759) is to the same effect.

Thus, it has been held that where a negligence action, conducted on a forty per cent basis, was settled for $10,000, the court could not, over the attorney's protest, disregard the contract, and allow a smaller compensation on the ground urged, namely, that his labor in procuring the settlement was presumably less than that which could have been required by a trial. In such case the statutory declaration (Judiciary Law, § 474) applied, that the attorney's compensation is governed by agreement. (*Murray* v. *Waring Hat Mfg. Co.*, 142 App. Div. 514.) Why should not the contract control also the case of duly interrupted performance?

It has also been held that where the client has paid in advance the agreed fee for prosecuting an action, the client, upon electing to abandon the action, cannot recover the money so paid, if the attorney be ready and willing to carry on the case, although the abandonment was induced by the attorney admitting he did not know whether the suit would be successful or not. (*Riehl* v. *Levy*, 43 Misc. 59.) Not even a part can be recovered. (*Matter of Secrest*, 129 Misc. 793.) Is not there just as much reason here to " imply " a drawback as there is a waiver?

How far are the other New York cases consistent with the theory that the original contract remains effective after a *bona fide* discharge? This detailed contract is silent as to the client having any right to quit or discharge. It appears to have been for an entire service at a lump sum. (*Bathgate* v. *Haskin*, 59 N. Y. 533; *Tenney* v. *Berger*, 93 id. 524.) While the executor client could not quit liquidating the estate, she could change attorneys, but the

agreed work, of liquidating it by a fixed date, appears to be sufficiently defined to call the contract an entire one. However, inasmuch as this contract contemplated there would be no litigation, or any extraordinary service required, the " estate," as a subject-matter of service, was a divisible one, as usual. So, in effect, the implying into such a retainer contract of this right to discharge at will seems to make the contract, analogous to a contract, *e. g.*, between a lumber dealer and a builder whereby the builder agreeing to take 1,000,000 board feet for $10,000 is deemed to have meant — whether he actually did or not — to take " up to " that amount; and so, after accepting part deliveries, can lawfully tell the dealer he chooses to accept no more, and then be held to pay only *pro rata*. Hence it has been said: " if his compensation is * * * subjected to the whim * * * then it is useless for him to contract at all, since all contracts of this character, whatever their form, would be only unilateral in effect." (*Friedman* v. *Mindlin*, 91 Misc. 473.)

So, the Court of Appeals has said: " We do not think that the rule that an attorney is bound to an entire contract should be very rigidly enforced, while the client is left with the right arbitrarily to discharge him." (*Tenney* v. *Berger*, 93 N. Y. 524.)

Ordinarily, if the client alone were at fault, the measure of damages for the breach of a contract for ordinary personal service would be, *prima facie*, the agreed price. (*Rishel Furniture Co.* v. *Stuyvesant Co.*, 123 Misc. 208.) Assuming the client has, by implication of law, the right to quit or discharge at will, still other implications of their contract may negative this implied right. (*Greenberg* v. *Remick & Co.*, 230 N. Y. 70.) There the attorney was hired for one year at $5,200, payable $100 weekly, but in the fifth month he was discharged. It was held that as this employment was not, as to either party, an employment at will, the discharge was wrongful, and made the client liable for breach. The contract, therefore, in any event, governs the situation, especially where it has not been breached.

A dictum to the effect there is no difference between fixed fees and contingent ones in respect of this implied right appears in *Bloom* v. *Irving Trust Co.* (152 Misc. 50). In each class the right to discharge is recognized, but beyond that there are differences, especially in the results of exercising it. On the principle that no one should be paid for what he did not do (*Johnson* v. *Ravitch*, 113 App. Div. 810), nor contrary to the terms of an unbreached contract, the contingent fee case, when the client has exercised his implied right, presents the seeming paradox that whereas the intention of the parties expressly was " no recovery, no pay," and this contract stands unbreached by either party, yet the discharged

attorney must be paid for what he actually did, regardless of the possibility of there not being, in the end, any recovery whatever. This seems to be the ruling in some cases which authorize a recovery of reasonable value of the rendered service, forthwith and independently (*Lewy* v. *Union R. Co.*, 151 Misc. 724) of the contract. This cannot mean that a new contract of retainer is, by the discharge, forced upon the parties; nor that they escape altogether from their original obligations; for all the *bona fide* discharge requires the court then to determine is the comparatively smaller legal value, if any, of the attorney's frustrated chance to beat the chance of losing the case for which he was contingently retained. As to this the original contract is silent; but there is good ground for saying the contract still subsists to the extent of setting the outside limit; for there is this definitive statement in the opinion in *Andrewes* v. *Haas* (214 N. Y. 255), where the clients had " abandoned " a case on a contingent fee, " We refuse to hold that they were bound to pay their lawyer as if they had gone on with it and won it." This is the most that is meant by those broad expressions of " rescission," and then only in case the discharge was in good faith. By that declaration the court recognized this top limit to be a contractual one, resting on the agreed contingency, and on the implied right to quit or to discharge. So, the unbreached contract was still in effect to that extent. It may be inferred then that there is no difference in the implied right itself as between absolute and contingent fees; but that otherwise an unbreached contract, notwithstanding a due discharge, still governs the case, as far as possible, according to its terms and subject-matter. This is all the more true where the parties intended the lawyer should be paid in any event, *i. e.*, in the absolute or fixed fee case, such as in this case at bar.

So, where by its legal implications an unbreached contract for his personal service cannot be further performed by the lawyer, either by reason of the client, in good faith, exercising his implied rights as such, or by reason of the other implications of the " personal " nature of the agreed service, where inevitable illness (*Wolfe* v. *Howes*, 20 N. Y. 197) or death (*Sargent* v. *McLeod*, 209 id. 360) prevents further performance, the client is bound to pay the reasonable value of what was actually done, not exceeding, however, the sum or rate fixed by the contract. (*Sargent* v. *McLeod, supra; Wolfe* v. *Howes, supra.*)

This conclusion is not impaired by the decision that immediately upon the performance being duly interrupted, by death, illness or by the client's *bona fide* exercise of his implied right, the lawyer becomes entitled to his recompense at once; and hence his time to sue therefor dates from such cessation of performance (*Martin* v.

*Camp*, 219 N. Y. 170), for his compensation then is said to be payable " forthwith." (*Bloom* v. *Irving Trust Co.*, 152 Misc. 50.) Nor is there any conflict caused by the decision that an attorney on a contingent fee, who has been duly superseded, could not recover his full agreed compensation, but was obliged to show the value of what he had actually done (*Matter of City of New York*, 219 N. Y. 192); for this, in any theory, he was legally bound to do, where the client had discharged him in good faith; as the client presumably did, for the report does not suggest the contrary; nor does it show that the work had been so nearly all done before the discharge that the client's action was apparently taken in bad faith. Nor is there any conflict arising from the ruling that an attorney on a contingent fee, who has been duly discharged, cannot recover the " profits " that would have come to him had the action been pressed to a successful conclusion. (*Andrewes* v. *Haas*, 214 N. Y. 255.) This ruling, rather, confirms the view that the contract governs even after the discharge, so that the ultimate contingency agreed upon cannot be anticipated by paying the lawyer presently for what he never had done, nor ever might get. The court refused, as the foregoing quotation shows, to resolve all doubt in his favor. The attitude of the Court of Appeals is also illustrated in *Marsh* v. *Holbrook* (59 Barb. 577, note; 3 Abb. Ct. App. Dec. 176), and like settlement cases summarized below, showing the continuing effectiveness of the retainer contract where the performance has been duly interrupted.

One can infer, therefore, that in any case, of a fixed or contingent fee, where neither the client nor the lawyer were at fault in respect of the discharge, their contract governs the greatest possible compensation, if any, obtainable, by limiting it — depending on the facts and proof — to not more than the agreed price fixed in or contemplated by the contract of retainer.

Where, however, the client in discharging the attorney, has acted in bad faith, and the attorney was without fault, the contract was thereby breached by the client, in any theory; and should be dealt with under the general rules of damages. Notwithstanding this essential difference, many excerpts from the opinions in this class of breach cases have also been stressed in the briefs filed herein. Those remarks do not govern this case; nor do these cases — or any other case in the Court of Appeals except *Sargent* v. *McLeod* (*supra*) — specifically indicate whether the reasonable value then is to be computed independently of the basic contract, or may far exceed it, as the respondent claims it can in any case whatever. The nature of the case in hand now requires only that this class of breach cases be delimited. No doubt the client's right to control his retainer does not permit him to cheat his attorney. (*Hausvater*

v. *Winkler & Diamont, Inc.*, 154 Misc. 555.) This sort of crookedness is condemned *arguendo* in the *Krooks Case* (257 N. Y. 329), where the court opines this cheating will be prevented by allowing the attorney the reasonable value of his services, but to what extent in amount the opinion is silent. An allowance independent of the contract might be unjust to the client. Why cheat him by unbounded generosity to his sometime attorney?

Obviously, where the work for which the attorney had been employed had been completed before his discharge, or was in effect regarded by the client as completed, as by a settlement of the case, the attorney was held entitled to the whole agreed compensation in *Bermant* v. *Keveney* (88 Misc. 527; affd., 170 App. Div. 898); but this has been somewhat modified, as will be presently shown in discussing the settlement cases. In cases where the discharge came just after the lawyer had well done substantially all of the agreed work, the general tendency of the lower courts has been to cleave to the contract, perhaps because they felt, as did counsel in the *Kaplowitz Case (supra)*, that most such discharges are " fraudulent;" but the highest court has stood out for a general, undefined allowance in *quantum meruit*, without expressly adverting to the fact, which other jurisdictions (See *Eastman* v. *Blackledge*, 171 Ill. App. 404; *Kent* v. *Fishblate*, 247 Penn. St. 361; 93 A. 509) make very clear, that the client had really breached the contract by abusing his " implied " right to discharge his lawyer. Those New York cases do not refer in any way to the question of the contract price remaining still the top limit, perhaps because this point was not presented.

Thus, in *Matter of Krooks* (257 N. Y. 329), the lawyer was in a land condemnation on an agreement he was to have " all moneys in excess of $38,000." Two days after the court's memorandum decision was filed awarding $46,500, he was discharged, without cause on his part. Aside from a slight abatement for the purely clerical work remaining to be done, this attorney had earned practically the whole of his fee, so that the client's good faith in discharging him at that time might well have been suspected, for any ensuing dispute generally is then as to the attorney's recompense, rather than as to his honesty as a collector. To say there was an " implied " right to make such a discharge, and thereby limit the attorney to a " reasonable value," much less than his full recompense, would be to sanction the making of a new contract for him, if not the stealing of the fruits of his labors. In other words: " It seems to me inequitable that a client should have an option to stand by the contingent feature of the employment if it turns out unsuccessful, but to turn it into a cash arrangement at a moderate cost to himself if he sees that it is going to succeed." (*Ransom* v. *Ransom*, 70 Misc.

30, 44.) This case suggests a fair apportionment should be made of the contingent fee as between the work done and the work undone at the time of the attorney's discharge; but this plan seems to have been disapproved in *Bloom* v. *Irving Trust Co.* (152 Misc. 50) and in *Dykman* v. *New York* (183 App. Div. 859).

The trial court in this *Krooks* case fixed the lien on the excess which might be paid. The highest court remitted the case to have testimony taken as to the value of the services, generally and indefinitely; but inasmuch as all that appears to be called for was a small abatement for the clerical work yet to be done, this denial of the full contract recompense implies that the reasonable value must be less. Had the court thought it should exceed the agreed recompense they most likely would have said so.

Likewise, in *Matter of Tillman* (259 N. Y. 133), the lawyer was to have three per cent of the proceeds, if any, of certain claims; and just after he had succeeded in establishing his client's right thereto, which was the main thing in dispute, he was discharged, when nothing remained to be done but to have a referee compute the amounts due. Apparently recognizing the discharge was in bad faith and really a breach by the client, the trial court allowed here a substitution on condition the client file a bond to pay the agreed three per cent of such recovery as might be had; but again the highest court remitted the case to fix his lien on the basis of *quantum meruit*, " not alone on the basis of a rescinded contingent contract, but also upon a foundation built of the volume and quality of the professional services actually and necessarily performed." Again, the denial of the agreed recompense in full implies that this reasonable value must be in a smaller sum.

A like result was reached in *McAvoy* v. *Schramme* (238 App. Div. 225; affd., 263 N. Y. 548), where the discharge came after the client had been substantially benefited by the attorney's services. Here there was evidently something more to be determined than the value of a mere frustrated chance. So, in *Matter of Weitling* (266 N. Y. 184), the court stresses the fact that the attorneys had " performed extensive services," including a jury trial and appeal to the Appellate Division, with over $1,000 in disbursements, when the client became dissatisfied on an alleged, and as yet undetermined claim, the attorneys had been guilty of unprofessional conduct.

In *Tenney* v. *Berger* (93 N. Y. 524) the client gave the attorney sufficient cause to withdraw from the case, without fault on his part, and he was held entitled to the value of his services.

Counsel have also cited *Matter of Snyder* (190 N. Y. 66), which seems to hold that it is champertous on the part of the attorney to obtain from a client an agreement the latter will not settle the

case. Still, looking at the client's position, there is nothing wrong in the client's express determination to press his rights through to judgment. His failure so to do, by making a compromise, might be said to be a breach on his part which entitled the attorney to recover the reasonable value of what had been done up to the settlement; for the very fact of compromise shows the large amount of legal service which up till then had been done, must have had the effect of establishing his rights, *prima facie* at least. Looking at the attorney's situation, while his procuring such an agreement, in connection with his contingent retainer, was against public policy, it was not the main object of the retainer, but a vice that infected an incidental or subordinate matter (2 R. C. L. p. 1046); and, therefore, did not deprive the attorney of all recompense, as would have been the case had the main object of the retainer been against public policy; but it relegated the attorney to a recovery of the reasonable value of what he had actually done, although the agreement not to settle and the agreement to recompense were connected to the extent that the client's breach prevented the attorney getting, possibly, more in the end. Here the trial court referred the case to have the reasonable value determined; but the Appellate Division held the attorneys could stand on their contract. The highest court sustained the view taken by the trial court. Here the attorneys had a contract for half the recovery. After a large and effective amount of work had been done, the client settled for $7,500, which was deposited in court. The attorneys claimed their services were worth $15,000. The court of first review held them entitled to half the sum in court. In the end they were allowed the whole $7,500. One judge in the Court of Appeals had urged the court to declare the attorneys still had a cause of action for $7,500 more; but apparently nothing came of it.

Where the settlement case is not complicated with the agreement not to settle, the decisions appear to have been influenced by the contract price more than by the reasonable value; but in the latter respect, none of them expressly approve an award in excess of the contract price.

Thus, in *Bermant* v. *Keveney* (88 Misc. 527; affd., 170 App. Div. 898), the client, against the advice of her attorney, accepted an offer of settlement he communicated to her, and thereupon discharged him. He recovered the agreed compensation in full.

In *Marsh* v. *Holbrook* (59 Barb. 577, note; 3 Abb. Ct. App. Dec. 176) the client agreed to pay the attorney $5,000 if the latter took his case and won. When the attorney had partially succeeded and was properly prosecuting the case, the client settled. At General Term it was held the contract with the attorney did not debar the client

from settling but that in doing so the client did not end the contract with the attorney, who was entitled to recover precisely what he would have made by full performance. However, in the Court of Appeals (3 Abb. Ct. App. Dec. 176) it was held that he was, at least, entitled to be paid in proportion to the sum received by the client in settlement of the action. Here again the award was less than the contract, but was based upon it.

In *Matter of Reisfeld* (227 N. Y. 137) an administrator, after having engaged an attorney on a percentage, privately settled the case. The Special Term held the attorney's lien extended to the reasonable value of the service; whereas the Appellate Division held the lien must be measured by the contract. The highest court held the contract applied only to the administrator's own distributive share. Apparently, the others stood to be charged less under the "reasonable value" rule, or so hoped.

The same rule on settlement is laid down in *Matter of Latourelle* (143 Misc. 351), and see *Matter of Gilman* (251 N. Y. 265, 274). It is significant also that in these settlement cases the sum paid the client fixes the basis for computation of the attorney's agreed percentage (*Ward* v. *Donovan*, 235 N. Y. 240), where the defendant settling the action undertakes to protect the client against the lien. He must retain enough to pay the attorney the agreed percentage. (*Sargent* v. *McLeod*, 209 N. Y. 360; *Matter of Levy*, 249 id. 168.)

In none of those cases, whether of breach or of settlement, did the recovery exceed the agreed price; but in many of them the continuing effectiveness of the contract is recognized. Other rulings have been cited that seem simply to repeat prior decisions; and those yield no special help here; nor do rulings in commercial cases or building contracts, or on other distinct subject-matter, cited in the briefs.

Finding no controlling ruling to the contrary in the divergency that has long persisted, and following out the New York theory that the client's implied right, in good faith, to cut short the performance of a retainer contract, is not a breach thereof, one must conclude on the facts found herein as follows:

1. That the agreed work was well and substantially done, as aforesaid, to within a small fraction of the extent contemplated by the parties; and

2. That the client duly exercised, in good faith, her right to stop the service at the point she did, as aforesaid; and the attorney was not at fault in any way that justified his discharge; and

3. That there was no breach of the contract by either party; and that, notwithstanding the due stopping of service, the unbreached contract remains in full force and effect, for every pur-

pose within the contemplation of the parties, consistently with the client's right to quit or to duly discharge as aforesaid; and

4. That the unbreached contract fixed at $5,000 the price, or the value, or the " damages that were within the contemplation of the contracting parties," as the most the client would have to pay in any event; and

5. That the client is entitled to an abatement of the contract price in respect of the part of the agreed work yet to be done — which was a divisible subject-matter — in the ratio that the remnant bears to the whole agreed work and price; and

6. That the reasonable or market value of the whole or the part, as estimated independently of the contract, does not control this computation; and

7. That the proportionate contract value of the one-sixth of the agreed work yet to be done is $833.34; and

8. That the attorney is entitled to recover forthwith the balance, viz., the sum of $4,166.66, as the proportionate contract value of the part of the contract he had duly performed up to the time he was duly told that further performance of the contract on his part was not required; and

9. That by reason of said matters in difference having stood hitherto unliquidated, the respondent is not allowed interest on said sum of $4,166.66; and

10. That the respondent should be allowed costs, to be taxed and inserted in the decree, and made payable out of the estate.

On notice or appearance of counsel, submit a decree for settlement in accord with this decision, and enter.