UNITED STATES, for Benefit of COLLINS v. UNITED STATES FIDELITY & GUARANTY CO. et al.

(Supreme Court, Appellate Division, Second Department. June 24, 1910.)

1. PARTNERSHIP (§ 279*)—DISSOLUTION—EFFECT—EMPLOYMENT CONTRACT.

Where plaintiff's contract of employment with a firm was for an indefinite period, and though related to a specific work was not necessarily during the entire continuance thereof, but might have been terminated by either party at any time, it was terminated by a dissolution of the firm by death of one of its members.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 636, 637; Dec. Dig. § 279.*]

---

2. PARTNERSHIP (§ 284*)—CONTRACTS—TERMINATION.

Where a dredging contract between a partnership and the United States was for a specific piece of work, and did not involve any personal relations between the parties, it was not terminated by a dissolution of the firm by the death of one of the members, but it was the right and duty of the surviving partners to complete it.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 629; Dec. Dig. § 284.*]

3. PARTNERSHIP (§ 285*)—DISSOLUTION—CONTRACT FOR SERVICES—CONTINUANCE.

Where a contract for plaintiff's services to a firm was for an indeterminate period and was terminated by the dissolution of the firm by the death of one of the members, the surviving partners might make a new contract with plaintiff for his services, either express or implied, from plaintiff's continuance in their employ with no provision as to duration of service or compensation, in which event plaintiff could only recover the reasonable value of his services after the dissolution of the firm.

[Ed. Note.—For other cases, see Partnership, Dec. Dig. § 285.*]

4. WORK AND LABOR (§ 28*)—VALUE OF SERVICES—EVIDENCE.

Where, after the termination of plaintiff's express contract for services, he continued to work under an implied contract, the amount he was to receive under the express contract, while competent and strong evidence of the value of his services, was not conclusive.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. § 55; Dec. Dig. § 28.*]

5. WORK AND LABOR (§ 30*)—VALUE OF SERVICES—QUESTION FOR JURY.

In an action for services rendered after the termination of plaintiff's express contract, the reasonable value of his services *held* for the jury.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. § 60; Dec. Dig. § 30.*]

6. MASTER AND SERVANT (§ 80*)—ACTION FOR SERVICES—EMPLOYMENT—QUESTION FOR JURY.

Where, after the dissolution of a partnership by the death of one of its members, the surviving partners transferred a government contract to a construction company, and there was evidence that thereafter plaintiff worked for such company and not for the firm nor its survivors, whether they or the construction company, after the transfer, occupied the position of employer to plaintiff was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 121, 122; Dec. Dig. § 80.*]

7. APPEAL AND ERROR (§ 1172*)—JUDGMENT—THEORY OF CAUSE.

Where a judgment for services was not sustainable against defendant B. in any event, and there was no attempt to separate the liability of B. from that of defendant surety company, the whole judgment would be reversed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4555–4561; Dec. Dig. § 1172.*]

8. MASTER AND SERVANT (§ 80*)—ACTION FOR WAGES—VERDICT—EVIDENCE.

In an action by a servant for wages, a verdict allowing plaintiff $24,-366.64 *held* not sustained by the evidence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 118, 119; Dec. Dig. § 80.*]

9. UNITED STATES (§ 67*)—PUBLIC IMPROVEMENTS—CONTRACT—SURETYSHIP—"LABOR."

Services of a superintendent in charge of dredging work under a contract with the United States, which were rather those of a foreman in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

charge of the manual work than those of a financier or general business manager, were in the nature of "labor," within a provision of his employer's bond, given as required by U. S. Comp. St. 1901, p. 2523, providing that contractors shall promptly make full payments to all persons supplying labor and materials in the construction of the work.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*

For other definitions, see Words and Phrases, vol. 5, pp. 3948–3951.]

Appeal from Trial Term, Kings County. ·

Action by the United States, for the benefit of Henry Collins, against the United States Fidelity & Guaranty Company and Anson M. Bangs, surviving partner of the firm of Hughes Bros. & Bangs. From a judgment for plaintiff for $24,366.64, and from an order denying defendants' motion for a new trial, they appeal. Reversed.

Argued before WOODWARD, JENKS, BURR, RICH, and CARR, JJ.

E. J. Myers (Gordon S. P. Kleeberg and Harold Zeamans, on the brief), for appellant United States Fidelity & Guaranty Company.

James E. Gaynor (Glenn M. Congdon, on the brief), for appellant Bangs.

Edward W. Norris (Henry B. Hammond, on the brief), for respondent.

BURR, J. Hughes Bros. & Bangs, a copartnership composed of James Hughes, Eugene Hughes, and Anson M. Bangs, entered into a contract with the United States government on the 31st day of July, 1899, for the dredging of Bay Channel and Red Hook Channel in New York Harbor. The contractors, pursuant to the act of Congress approved August 13, 1894 (2 U. S. Comp. St. 1901, p. 2523), gave a bond, in which defendant the United States Fidelity & Guaranty Company became the surety. This bond provided, among other things, that the said Hughes Bros. & Bangs, their heirs, executors, or administrators, should "promptly make full payments to all persons supplying them labor and materials in the prosecution of the work provided for in said contract." In December, 1901, the said firm entered into an oral contract with Henry Collins, who was at that time in their employ, and engaged at work upon the Delaware Breakwater, under the terms of which he was to come to New York and take charge of the work in the harbor there. According to Collins' contention, they agreed to pay him $5,000 per year in monthly payments, and $5,000 in addition at the end of the year. He has brought this action under the provisions of the said act of Congress, in the name of the United States, against Anson M. Bangs, the sole surviving member of the said firm, and against the surety upon the said bond, to recover the balance which he claims to be due to him for his services, for a term extending from January 1, 1902, to August 17, 1905. During that period he was paid various sums of money on account of such services, and he now has judgment for $24,366.64, this being the balance found to be due to him at the rate of $10,000 per year. From that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

judgment, and from an order denying defendants' motion for a new trial, this appeal is taken.

We think that it must prevail. The express contract made by Collins with the firm of Hughes Bros. & Bangs in December, 1901, was for an indefinite period. Although it related to a specific work, it was not necessarily during the entire continuation of it. It might have been terminated by either of the parties at any time. Martin v. New York Life Insurance Co., 148 N. Y. 117, 42 N. E. 416. This express contract was terminated by the death of Eugene Hughes, one of the members of the said firm, in December, 1902. It is true that the contract between said firm and the United States government being for a specific piece of work, and not involving any personal relations between the parties, was not thereby terminated, and that it was the right and duty of the surviving partners to complete the same. It was not so with respect to the contract between that firm and Collins. The surviving partners could unquestionably make a new contract with him for his services. This might be either express for a specified period and at an agreed amount, or it might be a contract which would be implied by reason of the fact that he was continued in their employ, with no provision either as to the duration of the service or compensation therefor. In that case, as in any other contract implied from the mere rendition of services, plaintiff would only be entitled to recover the reasonable value thereof. The complaint in the first instance alleged the express contract of December, 1901. It alleged no other contract, either express or implied, made after the death of Eugene Hughes. At the close of plaintiff's case an application was made to amend the complaint, which application was granted, against the objection of defendants. The amendment permitted the insertion of an allegation that plaintiff rendered services to the surviving partners of Hughes Bros. & Bangs between December, 1902, and August, 1905. Previous to such amendment evidence of any services after the date of Eugene Hughes' death was seasonably objected to, and it may be doubted whether the court could grant the amendment asked for at the trial. But if so, this results. The complaint as amended alleged, first, an express contract for an indefinite period at the rate of $10,-000 a year, which was terminated in December, 1902, and then the rendition of services by plaintiff to the surviving partners from December, 1902, to August, 1905, but not under any express contract. If we assume that under the complaint as amended the proof was sufficient to show the existence of an implied contract, there is no allegation of the reasonable value of the services rendered under it, nor is there any evidence thereof except evidence that the former firm had agreed to pay Collins $10,000 a year. While this might be competent and strong evidence upon the question of reasonable value, it was not conclusive, and the court excluded evidence which defendants sought to elicit upon that subject upon the ground that he was entitled to recover $10,000 a year or nothing, and refused to submit the question of the value of his services under the implied contract to the jury.

We think that even under the amended complaint the judgment is erroneous upon another ground. There is some evidence that after

Eugene Hughes' death, and about January 1, 1903, the work was taken over by the Federal Contracting Company. It is true that the contract was not formally assigned to it, because apparently the law forbids such assignment. There was evidence, however, from which the jury could find that the relation between the surviving partners of Hughes Bros. & Bangs and the Federal Contracting Company was in the nature of a subletting of such contract. There was also evidence from which the jury could find that subsequently thereto Collins was working neither for the original firm of Hughes Bros. & Bangs nor the survivors of that firm, but for said company. If the evidence was not conclusive that from that date the Federal Contracting Company was his employer, and if the bona fides of the subletting from the surviving partners of the firm of Hughes Bros. & Bangs to the Federal Contracting ·Company was questionable, it was for the jury· under proper instructions to pass upon that, and say whether the surviving partners of the firm were liable to him for services rendered after that date, and that question the learned trial court refused to submit to the jury. Whether under the peculiar form of the bond given in this case, and the statute governing the giving thereof, it could be successfully claimed that the surety company was liable in any event, under the conditions above suggested Bangs would not be. This action was not only against the United States Fidelity & Guaranty Company as surety, but against Bangs, the surviving partner, as principal. There was no application to amend the complaint to sustain the action upon such theory, nor any attempt to separate the liability of Bangs and the surety company, and for that reason the whole judgment should be reversed.

We think, also, that the verdict was against the weight of the evidence. Collins' testimony as to the agreement of December, 1901, is that he was to have $10,000 a year; "$5,000 I could draw monthly, and the other $5,000 at the end of the year—every New Year's." Defendant Bangs, the only surviving partner of the firm, denies any such agreement, and testifies that he was to be paid $150 per month, which was equal to the salary he had been receiving from the firm while in their employ at the Delaware Breakwater, and an additional $150 per month owing to the increased cost of living expenses in New York. There was some evidence that in addition to the stipend of $150 a month, Collins had some interest in the profits of a commissary department carried on by the said firm. But the evidence as to the value of this interest is exceedingly vague and indefinite. At the rate of $300 per month Collins' salary for 3 years, 7 months and 17 days would be $13,070. If we add to the amounts which appear in his bill of particulars as having been received in cash and checks, namely, $11,265.52, the sum of $1,730.78, which he says he received from the sale of old junk on account of the firm, we have a total of $12,996.30 received by him as salary during the period of his service, which is suggestively close to the amount which would be due to him at the rate testified to by Bangs. He did receive some additional moneys during that time, about $2,400, which, however, he says that he credited upon a loan of $10,000, which it seems he had made to the firm

some time before, and for which, in May, 1906, he accepted notes of the Federal Contracting Company. The only witness who in any way corroborates Collins is the witness Donovan, formerly in the employ of the firm as a bookkeeper, and afterwards in the employ of the Federal Contracting Company. He says that at one time plaintiff told him that he was to have a salary at the rate of $10,000 a year, and that he spoke to Bangs about it by way of complaint that Collins' salary should be so much larger than his own, and that Bangs told him for the present to credit Collins on salary account at the rate of $5,000 a year. This testimony is rather negative in its character, although if true it would tend to contradict Bangs' testimony that Collins' compensation was to be no greater than at the rate of $3,000, and Collins' testimony that it should be at the rate of $10,000. But if Collins' testimony is true, as early as January 1, 1903, there was about $7,400 due him for arrears of salary, which sum steadily increased up to August, 1905, when he severed his connection with the work, at which time the jury have found that there was due to him more than $24,000 for arrears of salary. Notwithstanding this, although according to his claim he was abundantly secured by the bond of the surety company, he made no demand upon the said company, nor did he begin any action to recover this large sum until November 12, 1908. At that time three out of the four members of the original firm were dead, and the books of the old firm had disappeared, and apparently were not within the jurisdiction of this court. It may be that the original agreement was to pay Collins at the rate of $10,000 a year; we do not deem that fact established by a fair preponderance of the evidence now before us.

It was further contended by defendants upon this appeal that the services rendered by Collins were not in the nature of "labor" within the meaning either of the act of Congress above referred to or the bond which fixed the liability of the defendant surety company. Inasmuch as there must be a new trial of this action, it has been deemed advisable to express our opinion upon this point. Although the title of the position occupied by Collins as stated by him in the bill of particulars was that of "superintendent in charge of the dredging work," it appears that the character of the services rendered by him were rather those of a foreman in charge of the manual work to be performed under the contract than those of a financier or general business manager. It also appears that from time to time he performed manual labor himself in connection with the repair of some of the machinery employed in carrying out the provisions of the contract. We think that, as the evidence now stands, the character of the services performed by him were similar to those considered by the court in the case of Mining Co. v. Cullins, 104 U. S. 176, 26 L. Ed. 704, rather than those considered in the case of Hardaway v. National Surety Co., 211 U. S. 552, 29 Sup. Ct. 202, 53 L. Ed. 321.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event. All concur.