Application by the Bar Association to disbar John Schwarzkopf, an attorney. Application granted.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Einar Chrystie, for petitioner.

John Schwarzkopf, pro se.

PER CURIAM. The respondent is charged with having appropriated to his own use the sum of $1,400, collected for a client between November 30, 1906, and January 3, 1908. He acted under a contract by which he was to receive 25 per cent. of the amount collected and remit the balance to his client. He admits receiving the $1,400 on account of his client's claim in installments, admits appropriating the whole amount to his own use, and admits writing letters to his client stating that he had collected no money, when he had collected a substantial portion of the claim. The referee has reported that the charges are sustained.

The respondent was 33 years of age, and was admitted to the bar in 1898. He was then a clerk in the district attorney's office, where he continued until March, 1901, when he commenced the general practice of the law. About the 1st of May, 1903, he formed a copartnership with two other lawyers, which continued until some time in 1904. When the copartnership was dissolved, there resulted a succession of civil actions between the respondent and his partners, and criminal charges, all of which seem to have been finally disposed of by a settlement between the respondent and his partners. The retainer from the client on which these charges are based was on June 26, 1906, about two years after the copartnership was dissolved, and some time after the matters in dispute between himself and his partners were settled.

The dispute between the respondent and his partners and the mental disturbances caused thereby would seem to have little application to this proceeding. It certainly could not in any way be a justification for the respondent appropriating the money of his client, received long after the dissolution of the firm. The respondent gave no testimony as to the conditions upon which he received this money. He gave no excuse for appropriating it to his own use, instead of paying it to his client, and his conduct before the referee was certainly not such as to justify the court in relieving him from the consequences of his misappropriation of his client's moneys.

It follows that the application must be granted, and the respondent disbarred.

---

POLLACK v. SHUBERT THEATRICAL CO.

(Supreme Court, Appellate Division, First Department. October 20, 1911.)

MASTER AND SERVANT (§ 48*)—EMPLOYMENT CONTRACT—CONSTRUCTION.

A contract engaging plaintiff to appear in musical plays for a definite season at "$250 weekly for each and every week that he publicly appears and performs" makes it optional with the employer whether he will give

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

actual employment, and a complaint on the contract by the employé for failing to furnish employment does not state a cause of action.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 62; Dec. Dig. § 48.*]

Appeal from Special Term, New York County.

Action by Frank V. Pollack against the Shubert Theatrical Company. Order denying motion for judgment on the pleadings, and defendant appeals. Reversed, and motion granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and MILLER, JJ.

Max D. Steuer, for appellant.

Walter Loewenthal, for respondent.

McLAUGHLIN, J.   This appeal is from an order denying a motion for judgment on the pleadings.   I am of the opinion that the complaint does not state a cause of action, and for that reason the motion should have been granted.   The action is brought to recover damages for the breach of a written contract of employment.   The complaint alleges:

"III. That heretofore, and on or about the 3d day of August, 1909, the plaintiff made and entered into a contract or agreement in writing with the defendant, wherein and whereby the defendant engaged the plaintiff to appear in musical plays for the theatrical season of 1909–1910, beginning on or about the 1st day of September, 1909, and terminating on or about the 1st day of June, 1910.

"IV. That the defendant, for and in consideration of such engagement, agreed and promised to pay for such services, and the plaintiff agreed to accept, two hundred and fifty dollars ($250) weekly for each and every week that the plaintiff publicly appeared and performed."

Then follow allegations to the effect that the plaintiff duly entered upon the performance of the contract, and performed such services as were required of him, until the 30th of October, 1909; that thereafter he was ready, able, and willing to publicly appear, and held himself in readiness and offered to perform said contract on his part to be performed, but that the defendant, without cause or reason therefor, failed to furnish musical plays in which plaintiff might publicly appear and perform under the contract, and refused to accept his services; that by reason of that fact the plaintiff was entitled to recover from the defendant the sum of $250 per week from the 30th of October, 1909, to the 15th of February, 1910, when the plaintiff refused to further render any service because of the defendant's failure to pay him the amount then due; and that, by reason of defendant's failure to perform, plaintiff had been damaged in the sum of $3,750, for which judgment was demanded.

From the facts alleged it appears that the defendant engaged the plaintiff to appear in musical plays for the season stated, and agreed to pay him $250 weekly *for each and every week that he publicly appeared and performed.*   There is no allegation, or any facts pleaded from which such allegation can be inferred, to the effect that the defendant bound itself to give the plaintiff employment, or permit him

to appear or publicly perform, for any specified time. It simply agreed it would pay him for such time "as he publicly appeared and performed"; in other words, under the contract as pleaded, it was entirely optional with the defendant whether it would give the plaintiff actual employment or not, but, if it did, it was to pay him the compensation agreed upon, and there are no allegations in the complaint to the effect that the plaintiff has not been fully paid for each and every week that he did appear and publicly perform. This being so, it seems to me a cause of action is not alleged.

It follows that the order appealed from must be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs, with leave to the plaintiff to serve an amended complaint on payment of such costs. All concur.

---

### WILLIAM BRADLEY & SON v. HENRY HUBER CO. et al.

(Supreme Court, Appellate Division, First Department. October 20, 1911.)

1. MUNICIPAL CORPORATIONS (§ 373*) — MUNICIPAL LIENS — NOTICE — SUFFICIENCY.

Though Lien Law (Consol. Laws 1909, c. 33) § 23, requires the article to be construed liberally, a notice of municipal lien is ineffective, if it does not state when the claim is due, as required by section 12.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

2. MUNICIPAL CORPORATIONS (§ 373*)—MUNICIPAL LIENS—ENFORCEMENT.

A lien for labor or material furnished for a municipal corporation is lost through failure to sue to foreclose it within three months from filing of notice, and through failure to file notice of such suit, as required by Lien Law (Consol. Laws 1909, c. 33) § 18.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. § 373.*]

3. MUNICIPAL CORPORATIONS (§ 373*)—MUNICIPAL LIENS—ENFORCEMENT—"LIENS."

Lien Law (Consol. Laws 1909, c. 33) § 17, providing that, if a lienor is made defendant to a suit to enforce another lien, and plaintiff or such defendant has filed notice of pendency of the suit, the lien of such defendant is continued, does not extend to municipal "liens."

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 373.*

For other definitions, see Words and Phrases, vol. 5, pp. 4144–4153; vol. 8, p. 7707.]

Appeal from Trial Term, New York County.

Action by William Bradley & Son against the Henry Huber Company, the Charles J. Tagliabue Manufacturing Company, and others. From the judgment, plaintiff and the named defendants appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and MILLER, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes