RICE et al. v. MINER.

(Supreme Court, Appellate Term, First Department.   March 4, 1915.)

1. CONTRACTS (§ 155*)—CONSTRUCTION—LANGUAGE—PARTY USING WORDS.

A claim by one who prepared a detailed agreement between himself and two others, upon which the parties acted for practically the entire term, that it was not a binding contract, because capable of construction under which it lacked mutuality, is not one to be favored, and will be rejected, if the agreement is capable of a construction that will uphold it.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 736; Dec. Dig. § 155.*]

2. MASTER AND SERVANT (§ 73*)—CONTRACTS FOR EMPLOYMENT—CONSTRUCTION.

A contract, which was drawn by the defendant, a theatrical manager, and which stated that he engaged plaintiffs, who were actors, to render professional services at such times and in such performances and places as might be required of them during a period of 35 weeks, that the plaintiffs accepted such engagement, and agreed to render the services, and agreed not to render services for any other person during such season, that of the profits in excess of a certain amount the plaintiffs were to receive a percentage, and that the defendant agreed to pay plaintiffs a stipulated sum per week for each week during which they rendered such services, but that they should receive no compensation for services not actually rendered, and there should be a pro rata deduction for each performance in which they did not appear, requires the defendant to furnish employment during the entire term, and the plaintiffs are entitled to compensation for a period during which he failed to furnish such employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 90–102; Dec. Dig. § 73.*]

3. MASTER AND SERVANT (§ 73*)—CONTRACT OF EMPLOYMENT—CONSTRUCTION— "INTERFERENCE OR RESTRAINT OF A LEGAL AUTHORITY."

A clause in such contract exempting the defendant from the payment of the salary when the performance was prevented by the "interference or restraint of a legal authority" did not relieve him of liability to pay for such services during a week in which he failed to procure a theater license, since that clause contemplates active interference by public officials.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 90–102; Dec. Dig. § 73.*]

4. MASTER AND SERVANT (§ 73*)—CONTRACT OF EMPLOYMENT—CONSTRUCTION.

Where defendant employed plaintiffs to render services during a theatrical season of 35 weeks, beginning on or about a certain date, as laid out by an amusement company, he was not relieved of liability to pay their compensation for a time during which the amusement company failed to furnish employment, since it was defendant's duty to see that the employment was furnished.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 90–102; Dec. Dig. § 73.*]

Pendleton, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by Sam Rice and another against Edwin D. Miner. Judgment for the plaintiffs for only the amount admitted by the defendant to be due, and plaintiffs appeal. Judgment modified and affirmed.

Argued February term, 1915, before GUY, PENDLETON, and SHEARN, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

O'Brien, Malevinsky & Driscoll, of New York City (Alfred G. Steiner, of New York City, of counsel), for appellants.

Burkan &· Davidson, of New York City· (Samuel W. Tannenbaum, of New York City, of counsel), for respondent.

SHEARN, J. The action is one to recover damages for alleged breach of contract of employment. Plaintiffs are actors, and defendant is a theatrical manager. The contract, which is in writing, was prepared by the defendant. The first cause of action alleged that the defendant furnished the plaintiffs with no employment for the week of December 8, 1913, and the first half of the week commencing January 5, 1914, thus failing to provide employment for the full period of 35 weeks alleged to have been contracted for; also that plaintiffs were caused to make certain expenditures for railroad fare which should have been made by defendant. The second cause of action is to recover salary, less certain expenditures made on behalf of plaintiffs, for the week commencing April 25, 1914. The services for this week were admittedly rendered, but defendant pleaded an alleged tender. There was judgment for the plaintiffs on the second cause of action, and the questions arise upon the first cause of action. As to the first cause of action, the defendant relies mainly upon provisions ·in the contract which, it is claimed, exclude liability for failing to furnish the employment.

The defendant first contends that he was under no legal obligation, after executing this instrument, to engage the plaintiffs at all; that he did not undertake to employ them for any definite period, but simply to pay them for services which they actually rendered; and that the contract was invalid for lack of mutuality. Defendant relies on Pollock v. Shubert, 146 App. Div. 628, 131 N. Y. Supp. 386. This contention makes it necessary to quote the contract at some length.

"The manager engages the artists to render professional services at such times and in such performances and plays as may be required of artists, and in such places of entertainment in the United States and Canada as the manager may designate, and in such characters to which artists may be assigned during the theatrical season 1913–1914, said season commencing on or about August 25, 1913, and to consist of 35 weeks as laid out by the Columbia Amusement Company."

"The artists hereby accept such engagement and agree to render to the manager said professional services in a correct and painstaking manner to the best of artist's ability, and to attend and take part in any performance whenever called upon so to do by the manager."

"The manager agrees to pay to the artists one hundred and seventy-five dollars ($175.00) a week for each week during which artists shall have rendered such services. * * * Should Miss Beeson leave the above company, the sum of fifty dollars ($50.00) is to be deducted weekly from above salary."

"As additional compensation' for services to be rendered by Sam Rice, the manager agrees to pay to said Rice twenty (20) per cent. of the profits of the above show, after the cost of production, cost of operation, and the sum of five thousand dollars ($5,000.00) has been deducted from said profits."

"The artists shall not receive any compensation for any services not actually rendered by them, and for each performance in which the artists shall not appear, a pro rata deduction may be made from the salary, based upon the number of performances given in such week."

"It is agreed that the manager may at his option suspend performances without salary to the artists during such periods when the giving of perform-

ances shall be rendered impossible by fire or the elements destroying any place of entertainment engaged for the giving of any such performances, or rendering the same unfit for use, or by the loss or destruction of or injury to scenery, costumes, or other materials necessary for the giving of such performances, or by strikes, delays on railroads, accidents, public calamities, or events which could not be foreseen or provided against by the manager or because of the interference or restraint by any legal authority."

"The artists further agree that artists will not, during the term of this agreement or any extension or renewal thereof, from the date of the signing of this agreement until the expiration of the same without the consent in writing of the manager first had and obtained, render any services for any person, firm or corporation whomsoever."

[1] The opinion of Cardozo, J., in Moran v. Standard Oil Co., 211 N. Y. 187, 105 N. E. 217, points the way to approach the determination of this question:

"Since the language is the defendant's, we must construe it, if its meaning is doubtful, most favorably to the plaintiff. * * * We must also give its words the meaning which the defendant ought reasonably to have understood that the plaintiff would put upon them. * * * Note, also, that the writing in its opening words is described as an agreement, and that the engagements of each party are couched in terms of agreement, and not merely of promise. The plaintiff 'agrees' to serve for five years. The defendant 'agrees' to pay him at certain rates. The very word 'agreement' connotes a mutual obligation. * * * There may be a 'promise' to serve without a promise to employ; but there can be no 'agreement' for service without mutuality of rights and duties."

When an agreement, such as this, drawn by the defendant, consisting of nearly four closely typewritten pages, and acted on by the parties for 33½ weeks out of a 35-week term, is thereafter claimed by its author to be no contract because it is capable of an interpretation spelling lack of mutuality, such a claim does not commend itself for favorable consideration, and should be rejected if the "agreement" is capable of a construction that will uphold it.

[2] In Pollock v. Shubert, supra, the alleged contract was not annexed to the complaint and in the motion for judgment on the pleadings the court merely had to construe the pleadings, which alleged no agreement on the part of the manager to employ the plaintiff, but merely an engagement by which the performer was to be paid for actual services rendered. Here the clause, "The manager engages the artists to render professional services" (for a season of 35 weeks), and the clause, "The artists hereby accept such engagement and agree to render to the manager said professional services," when construed in connection with the other provisions, constitute a complete and mutual agreement on the part of the manager to employ for the season and on the part of the artists to render their services throughout the season. This construction finds strong support in the clause whereby the artists "during the term of this agreement" bind themselves not to render services for any other person; also from the clause providing for a division of the profits of the production. If the clause, "The manager agrees to pay to the artists one hundred and seventy-five dollars ($175.00) a week for each week during which artists shall have rendered such services" renders nugatory the agree-

ment to employ, there is no explanation for inserting in the agreement the later provision that a pro rata deduction may be made from the salaries for each performance in which the artists shall not appear. Certainly this was unnecessary, if there was no obligation to employ. Then there is the clause permitting the manager to suspend performances without liability in certain specified cases such as strikes, accidents, and public calamities. The insertion of this clause supports the interpretation that the manager did not have the right to suspend performances for any other than the specified causes; in other words, that he had agreed to employ the plaintiffs and was obliged to furnish them with employment.

These considerations make it reasonably clear that this "agreement" is not void for lack of mutuality. In fact, the only excuse for this extended examination of the question is the reliance placed upon Pollock v. Shubert, supra.

[3] The defendant attempts to excuse his failure to furnish employment for the week of December 8, 1913, on the ground that no license had been obtained for the theater in which the performances were to be given, and it is claimed that this was an "interference or restraint of a legal authority," within the ninth paragraph of the agreement above quoted. That clause plainly contemplates active interference by public officials, and does not mean restraint by law, or include a case where the defendant failed to obtain or to cause to be procured a theater license.

[4] As to the half week in January, 1914, defendant was not excused from furnishing employment because of the provision in the first paragraph that the 35 weeks of employment were to be "as laid out by the Columbia Amusement Company." The plaintiffs had nothing to do with the routing or arrangement or division of time that might be made by the Columbia Amusement Company. Their function was merely to perform the agreed services for 35 weeks, however laid out during the season. It was the function of the defendant to see that the Columbia Amusement Company did lay out 35 weeks. It is unreasonable to interpret this clause as meaning that, if the Columbia Amusement Company failed to lay out any tour, the defendant would have been excused from his engagement to employ the plaintiffs for 35 weeks.

These questions of legal interpretation of the contract were for the court, and should not have been submitted to the jury. Plaintiffs were not entitled to the items of railroad fare; but, as respects salary, a verdict should have been directed in favor of the plaintiffs upon the first cause of action.

The order appealed from should be reversed, and, as plaintiffs' claim is purely a matter of computation, judgment is awarded to the plaintiffs for the sum of $408.50, with interest from April 25, 1914, together with costs in the court below and the costs and disbursements of this appeal.

Order reversed, and judgment modified, by increasing the same to the amount of $408.50 damages, with interest from April 25, 1914,

and appropriate costs in the court below, and, as modified, affirmed, with costs of the appeal to the appellants.

GUY, J., concurs.

PENDLETON, J. I dissent, on the ground that the contract sued on does not impose an obligation on the defendant to pay for a definite number of weeks. By the express provisions of the contract, the plaintiffs are designated therein as "artists." It then provides that:

"The manager engages the artists [plaintiffs] to render professional services at such times and in such performances and plays as may be required of artists, and in such places of entertainment in the United States and Canada as the manager may designate, and in such characters to which artists may be assigned during the theatrical seasons 1913–1914—said season commencing on or about August 25, 1913, and to consist of 35 weeks as laid out by the Columbia Amusement Company." The "artists" accept such engagement, and "agree to render to the manager said professional services, * * * and to attend and take part in any performance whenever called upon so to do by the manager," and the manager "agrees to pay to the artists $175 a week for each week during which artists shall have rendered such services."

I fail to see in the above any promise or agreement to pay for any specific number of weeks, either express or fairly to be implied. On the contrary, the provision as to payment expressly limits it to so much a week "for *each week during which artists shall have rendered such services*"; i. e., the professional services to be rendered at such times, etc., as the manager may designate. This expressly excludes the idea that payment was to be made for each of the 35 weeks. Such being the clear import of the express contracting clause of the agreement, I do not think it can be extended by possible inferences to be drawn from subsequent clauses of the contract, or other extraneous considerations. The provision as to a pro rata deduction from the salary, based upon the number of performances given in any week, was evidently intended to cover broken weeks, while the first two preceding lines of that clause accentuate the above construction. If it had been•intended to provide for a specific, or minimum, number of performances, it would have been easily competent to insert such a provision. Its absence is significant.

The question in this action is not as to lack of mutuality, but as to the terms of defendant's promise. In any event, lack of mutuality could scarcely be predicated of this contract, as the agreement to pay a percentage of the profits of the "show," whether plaintiffs played or not, would seem to be ample consideration for plaintiffs' promise. A contract giving a manager a call on the services of an artist, if supported by a consideration, does not lack mutuality. The clause as to the option to suspend performances, without liability for salaries, might have been shown, if the question of the validity of contract had been involved, to have been incorporated in the contracts with all employés, and to be for plaintiffs' benefit in connection with this profit arrangement, and thus not even by inference in any way inconsistent with the above construction of defendant's promise. Any person has the right to make such contract as he chooses, and the courts are bound, if for

a consideration and valid, to enforce it. Feinsot v. Burstein, 161 App. Div. 651, 662, 146 N. Y. Supp. 939.

Judgment and order appealed from should be affirmed, with costs.