CALLOPHONE COMPANY OF NEW YORK, Plaintiff, *v.* A. JAECKEL & Co., INC., Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, July 3, 1928.

**Contracts — mutuality — contract for installation and maintenance of callaphone equipment for period of eighteen months is enforcible — defendant did not have right to rescind.**

The plaintiff and the defendant signed an instrument in writing, by the terms of which the plaintiff undertook to install and maintain a callophone equipment in defendant's place of business for the term of eighteen months. The defendant agreed to pay a monthly service charge for the equipment. Before the expiration of eighteen months the defendant rescinded the contract and refused to pay the monthly charge thereafter.

The contract is founded upon good consideration and is mutual, and, therefore, is enforcible by the plaintiff.

The amount agreed to be paid for monthly service is presumptively the measure of damages which the plaintiff is entitled to recover.

SUBMISSION on agreed statement of facts, pursuant to Municipal Court Code, section 124.

*Robert J. Blum,* for the plaintiff.

*Campbell & Boland,* for the defendant.

SULZBERGER, J.   This is a controversy submitted upon an agreed statement of facts pursuant to section 124 of the Municipal Court Code. On October 6, 1927, plaintiff and defendant signed an instrument in writing by the terms of which plaintiff undertook to furnish, install, and maintain certain callophone equipment and incidental wiring in defendant's place of business. Plaintiff agreed to repair the equipment and wiring at its own cost upon receiving notice of the necessity thereof from defendant. Plaintiff also agreed, upon notice, to change the location of any or all of the equipment and wiring within the premises, or to any other premises occupied by the defendant. The defendant agreed to pay for the aforesaid service the monthly charges specified on the reverse side of this instrument. Paragraph 11 recites that: " This contract shall be in full force and effect from the date hereof for the term

of 1½ years (18 months) after the day of final installation,   *   *   *  "
which occurred on October 8, 1927.

Plaintiff duly performed on its part, and defendant made its
monthly payments up to February 29, 1928. By letter dated
February 28, 1928, defendant wrote to plaintiff to the effect that
it was consolidating with another firm, and called upon plaintiff
to discontinue the callophone service on and after March 1, 1928.
Plaintiff declined to discontinue its service or to remove its equip-
ment and wiring. Defendant has not made use of the callophone
service since February 29, 1928, and has refused to make any
monthly payments for the period subsequent to February 29, 1928.

While there is nothing to indicate the cost of installing this
callophone service, it appears to be somewhat elaborate. It con-
sisted of seven master or control telephones, twenty-six control
keys, four intercommunication keys, and eight loud-speaking
stations. There was no extra or separate charge for this installa-
tion. Obviously, this initial outlay represents plaintiff's invest-
ment, which was induced by the defendant's contractual obligation
to retain the service for eighteen months at so much per month.

Defendant disclaims liability on the ground that " the instrument
signed by the parties lacks mutuality, and is, therefore, not a
binding contract." This form of statement is likely to cause
confusion, and is at best an unnecessary way of stating that there
must be valid consideration. As Professor Williston pointed out
in his work on Contracts (Vol. 1, § 140): " The particular error
which is traceable to the misleading use of the word mutuality
as a requirement for the formation of contracts, is a tendency
observable in some cases to hold a contract invalid because the
obligation undertaken on one side is not commensurate with that
undertaken on the other."

The general rule is that the courts will not enter into an inquiry
as to the adequacy of the consideration. This rule is almost as
old as the concept of consideration itself. (1 Williston Cont.
§ 115.) It follows necessarily that one consideration may support
several promises. (1 Williston Cont. § 141.)

On its face and also on the reverse side, the writing in question
is described as a " contract." Not only this, but the writing is
replete with words connoting mutual obligation. An expressed
promise may be lacking, and yet the whole writing may be " instinct
with   *   *   *   an obligation " imperfectly expressed. (Cf. SCOTT,
J., in *McCall Co.* v. *Wright*, 133 App. Div. 62; *Moran* v. *Standard Oil
Co.*, 211 N. Y. 187, 198; *Wood* v. *Duff-Gordon*, 222 id. 88, 91.)
As was said in *Grossman* v. *Schenker* (206 N. Y. 466, 469): " A
contract includes not only what the parties said but also what is

necessarily to be implied from what they said.  (*Milliken* v. *Western Union Tel. Co.*, 110 N. Y. 403, 408.)  Thus the words ' cash on delivery ' with no other promise to pay ' imply a promise and create an obligation ' to make payment upon delivery.  (*Justice* v. *Lang*, 42 N. Y. 493.)  So the word ' sold ' in a written agreement implies not only a contract to sell but also a contract to buy (*Butler* v. *Thomson*, 92 U. S. 412, 414); and a contract to buy with no express promise to sell implies the latter obligation.  (*Hudson Canal Co.* v. *Penn. Coal Co.*, 75 U. S. [8 Wall.] 276, 289.) ' What is implied in an express contract is as much a part of it as what is expressed ' (Bishop on Contracts [2d ed.], § 241); for ' the law is a silent factor in every contract.'  (*Long* v. *Straus*, 107 Ind. 94, 95.) "

The fact that plaintiff incurred expense to the knowledge of the defendant (promisor), and in the reasonable belief that defendant would keep its promise, is, probably, ample to sustain this contract even in the absence of any other consideration.  (*Allegheny College* v. *National Chautauqua County Bank of Jamestown*, 246 N. Y. 369, 374.)  However, there is nothing illusory about the obligation of the respective parties to this writing.  (Cf. 1 Williston Cont. §§ 36, 36-a, 43, 47–49.)  The writing clearly constitutes an enforcible bilateral contract.  (Cf. *Benedict* v. *Pincus*, 191 N. Y. 377; *Saltzman* v. *Barson*, 239 id. 332, 335, 336; *North Side News Co.* v. *Cypres*, 75 Misc. 129; *Post* v. *Frank & Co.*, Id. 130; *Geringer* v. *Friedman*, 80 id. 212; *Meyer* v. *Schwinger*, 141 N. Y. Supp. 504; *Bozzone* v. *Stafford*, 85 Misc. 53; *Gabriel* v. *Opoznauer*, 89 id. 611; *Goldblatt & Schaeffler* v. *Skudowitz*, 172 N. Y. Supp. 339.)

For the sake of relative completeness I mention the following cases, which I have examined: *White* v. *Kingston Motor Car Co.* (69 Misc. 627); *Bustonaby Bros.* v. *Revardel* (71 id. 207); *Pollock* v. *Shubert Theatrical Co.* (146 App. Div. 628); *Goldberg* v. *Costuma* (132 N. Y. Supp. 745); *Whamond* v. *North Side Board of Trade* (148 id. 263); *Butchers' Advocate Co.* v. *Berkof* (94 Misc. 299); *Jermyn* v. *Searing* (170 App. Div. 707); *Sorrentino* v. *Bouchet* (161 N. Y. Supp. 262); *Garraway Co.* v. *National Photographers* (170 id. 10); *Clark Paper & Mfg. Co.* v. *Stenacher* (108 Misc. 399); *Railroad Service & Advertising Co.* v. *Lazell* (200 App. Div. 536); *Hallgarten* v. *Wolkenstein* (204 id. 487); *Stone* v. *Commonwealth Finance Corporation* (127 Misc. 368); *Dorrance, Sullivan & Co.* v. *Bright Star Battery Co.* (223 App. Div. 222); *Chicago & G. E. R. R. Co.* v. *Dane* (43 N. Y. 240); *Schlegel Mfg. Co.* v. *Cooper's Glue Factory* (231 id. 459).  They are so clearly distinguishable as not to require further elaboration.

The agreed statement of facts does not indicate that defendant

is entitled to any deduction from the contract price by reason of its revocation. *Prima facie*, the amount agreed to be paid is the measure of damages. (Cf. *Ware Bros. Co.* v. *Cortland Cart & Carriage Co.*, 192 N. Y. 439, 442; *Milage* v. *Woodward*, 186 id. 252, 257.)

Under the authorities I do not think that there is any choice but to find for the plaintiff. Apart from precedent, I believe, as Judge CARDOZO, now Chief Judge, aptly said in *Barkin Const. Co.* v. *Goodman* (221 N. Y. 156, 161): "Courts are not to shut their eyes to the realities of business life." If defendant had the right to discontinue the callophone service at the end of five months, it would follow that defendant had the right to discontinue the service at the end of the first month. The harshness of the conclusion suggests an error in the construction. I prefer that the determination in this case should square with "social utility — the mores of the times." (Cardozo, The Growth of the Law, p. 84.)

Judgment for the plaintiff for the amount demanded.