PAULINE STEIN, Plaintiff, *v.* MEYER JACOVITZ, Defendant.

Supreme Court, Kings County, November 6, 1930.

*Alexander J. Sparrow*, for the plaintiff.

*Lawrence I. Gerber*, for the defendant.

SENN, J.  The action was brought by the plaintiff to recover for services alleged to have been rendered by her as housekeeper and nurse in defendant's home for a period of about three years. At the time of the alleged services the defendant was a married man, his family consisting of his wife and two children.  The wife died, according to the only date definitely given, February 7, 1925. Plaintiff was an aunt of defendant's wife and entered the Jacovitz home about one year before the wife died and remained there until the defendant told her of his intended remarriage, about two years later.

Prior to this the plaintiff, who was a married woman, but at times estranged from her husband, had made her home with Mr. and Mrs. Jacovitz, more or less but not continuously, for a period covering about twelve years.  Once, during this time, she had resumed living with her husband, but this lasted only about a year.  She had lived in other places for short periods of time, but mostly at the defendant's home.  She claims that she paid board during this former period, but this the defendant denied.

During the three years for which she claims compensation she lived in the defendant's house practically as a member of the family, eating at the same table and associating with the whole family on terms of equality.  She was very fond of the two children and they were fond of her.  She did more or less of the housework and, when Mrs. Jacovitz was ill, took care of her, doing that which she characterized as nursing.

The law is well settled that when relatives live together under such circumstances, there is no implied agreement to pay for the services of the one coming into the house; and that if an express agreement is claimed it must be proven with some degree of definiteness.  It is true that in most of the cases in which this has been held, the claim was against the estate of a decedent. This is a claim against a living party and does not come under the rule of strict scrutiny and the necessity for corroboration prescribed in cases where claims have been withheld during the lifetime of the one claimed against; but it is still necessary that there should be some definite proof of an agreement to pay.

She testified that Mr. and Mrs. Jacovitz sent for her.  How they sent for her did not appear from any competent evidence. That she went to their home and said to them: " Children, I am living and making a living, and in the time I am not with you I save up $300 and you have to know that I am getting older and not younger and I want to have a couple of hundred dollars later

and if you want I shall stay with you, you have to know about my work."

She also testified that after his wife died, Mr. Jacovitz said to her that he wanted her to stay with him to take care of the house and the children. That about a week after the wife died, " I was there and Mr. Jacovitz and a man named Rushkoff, we were talking about the children and Mr. Rushkoff said, ' why do you talk about the children, why don't you talk about yourself.' I said, ' Mr. Jacovitz knows what I am worth and will positive give me.' * * * He took out his check book and made out a check for a thousand dollars. I said to him, ' I can't change a thousand dollar check.' I also said ' a thousand dollars is not enough.' He took away the check and he said ' I am going to deposit this check in your name and I am going to put away some money every week for you so that when you get old you won't have to 'work.' "

The defendant emphatically denied that there was ever any such conversation and denied that he ever drew a check for the plaintiff. He claimed that he personally never cared to have the plaintiff in his household, but submitted to her being there, first, out of deference to his wife's wishes and, later, on account of the children.

Mr. Rushkoff, said to be an uncle of defendant's, was present in court during the entire testimony, but was not called as a witness by either party.

The plaintiff was the only witness in her own behalf. From her version, making due allowance for her illiteracy and inability to express herself in any language, it is still doubtful, to say the least, as to whether the defendant ever agreed to pay her any wages at all.

It must be assumed, for the purposes of the motion, that the jury believed the plaintiff's version. If an agreement to pay for her services can be spelled out of her testimony, there still remains the difficulty that no evidence as to the value of her services was given, unless the alleged offer of a check for $1,000 can be called such evidence.

The offer was not accepted. The plaintiff never inquired of the defendant whether he had deposited the check or made weekly deposits as stated. If made, the offer may have been intended as a gratuity or the discharge of a moral obligation or part payment and part generosity, or any or all of those, at a time when he may have been mellowed by his bereavement. I do not think that it afforded any proper basis on which the jury could assess damages. How far it entered into the amount found by the jury cannot be estimated. If they took it to be an admission of the defendant

as to the value of the plaintiff's services to date, then the amount allowed for the ensuing two years was entirely inadequate. If they did not so consider it, then there was nothing on which they could base a finding as to value.

It is well settled that in cases of this kind, where no proof of the value of services is given, only nominal damages can be recovered. *Kies* v. *Binghamton Ry. Co.* (177 App. Div. 242) is cited as supporting the proposition but that case, with the authorities it cites, is distinguishable from the one at bar, in that lost time was sought to be recovered for, and there was no proof of what the value of the lost time was, but I think that *Blumert* v. *Hoes* (127 App. Div. 547) and *Scheu* v. *Blum* (119 id. 825) are squarely in point.

On the grounds stated, the motion to set aside the verdict and for a new trial must be granted. Submit order.