In the Matter of the Estate of JAMES H. MONTGOMERY, Deceased.

Surrogate's Court, Monroe County, February 10, 1936.

*MacFarlane & Harris* [*Wm. MacFarlane* of counsel], for the petitioner.

*Weldgen, Newton & Boyle* [*N. J. Weldgen* of counsel], for the respondent.

FEELY, S.   On the new trial herein, counsel submitted specific findings which have been made in the decision filed on even date herewith, whereby this court has just awarded the duly discharged attorney for due part performance of his services the sum of $13,000, with interest, as the reasonable value thereof, pursuant to the opinion of the Appellate Division (*Matter of Montgomery*, 246 App. Div. 495), reversing on the law the previous decree awarding the attorney $4,166.66, which had been based on the theory of proportionate contract value discussed in *Matter of Montgomery* (156 Misc. 583).

While this change from contract rate to reasonable value might well be let rest, without comment, on the controlling opinion of the higher court, still the appellant, by her choice of a trial *de novo* instead of waging her law in the highest court, has taken a course which required a review of the same facts from another legal viewpoint, it seems that a discussion of the new legal aspects of the case in its present stage may clarify the position of the trial court — aside from the findings aforesaid.

The position that has been held erroneous is that where an attorney, who had made a written contract for $5,000 to do, by a

fixed date, all legal work necessary to complete the liquidation of a decedent's estate of about $600,000, was lawfully stopped by his client in the course of his performance thereof, without fault on his part, at a point where five-sixths of the agreed work had been duly performed, he was then entitled to recover from the client a sum equal to five-sixths of the agreed price of the whole work.   This was reversed on the ground that under what is regarded as the settled law of this State the attorney was entitled to recover only a sum equal to the reasonable value of the work he had performed up to the time of his discharge; and that said reasonable value was neither limited nor controlled by the agreed price.   The reason given for the ruling is that the legal interruption of the contract has been said to have " abrogated " the contract; which cannot be " partially abrogated.   Either it wholly stands or totally falls " (*Matter of Tillman*, 259 N. Y. 133, 135).   The present application of that statement to this unique case seems questionable.

The exercise of the client's implied right to interrupt performance of a contract for legal services is said, in the language of the opinions, to have the effect of abrogating the contract entirely, but it was so said only in those cases where the decision proper was that the discharged lawyer, having agreed to win or ask for no pay, could not then insist that the court award or secure to him the agreed percentage of any recovery that might thereafter be had in the case, because at the same time that he had conditioned his recompense on success only, he had also impliedly agreed that the client might lawfully stop him short of that goal; and, therefore, it was held that this implied right of stoppage, when lawfully exercised, was inconsistent with securing to him in advance the equivalent of continuance on to ultimate success and the actual realization of it through the skill and effort of a third person; and by that denial the court is said to have " abrogated entirely " the terminal features of the stopped contract; and relegated the discharged lawyer to the initial value of his contract, *i. e.*, to the value of a legally frustrated chance to have succeeded, which by its inherent contingency and uncertainty is of very much less value than the agreed percentage of the recovery.   He could not then recover as much, and certainly not more, than he would have received had he been allowed to go on and was fortunate enough to have succeeded.   To that extent the contract of retainer appears to have been effective even though it had been partially " abrogated."

However, in a case where the client has agreed to pay, " win or lose," in any event, unconditionally, then the legal exercise of the right to quit or to stop performance could not destroy the

absolute right to compensation for the part performed, or for the value of the unconditioned contract where performance had not been allowed to be begun; and this value, by reason of the absence of the feature "win or no pay," is necessarily much more than the value of the mere chance that alone remains after a contingent fee case has been stopped. However, in respect of what that "abrogation" was predicted, to wit, the fruits of the contract as if it had been completed without interruption, these two classes of cases are alike in this, that the legally discharged lawyer in neither case can obtain what he would ultimately have recovered had he been allowed to complete. He cannot recover as much as if he had been allowed to complete, and surely not a sum far in excess of what complete performance would have brought him under the agreement.

For example, in the case at bar a definitely described legal service was undertaken in writing — on an absolute, not a contingent basis — for the gross sum of $5,000; and that service was lawfully stopped when it was about five-sixths done. The reasonable value, independent of the contract rate, of the part done was unquestionably worth $10,000, and actually worth $13,000, according to the prevailing rates in this locality and the undisputed testimony in the case; and similarly computed and proved, the reasonable value of the remaining sixth of the work was $1,500. There is no ground for any middle figure. The ruling is that the contract rate does not control; for the reasonable value is the sole measure. Now, if this client has to pay the $13,000 for duly stopping, at the five-sixths stage, a $5,000 contract, then it can well be said that she has thus been severely penalized for the lawful exercise of her clear legal right to interrupt, in good faith, the performance of the retainer contract. The lawyer will thus have received more than he would have obtained had he completed his contract. Such excess is precisely the thing that is implicitly condemned in the cases that speak of the contract as "abrogated" in respect of the terminal features of the stopped contract, to wit, the fruits of the contract as if he had gone steadily on to completion.

It appears, therefore, that in such a case there must be some limit to the "abrogation." In so far as the fee was contingent, the stopped contract still prevents the attorney presently capitalizing ultimate success, he might never meet. If his fee were absolute, it might be inferred that he also, when duly stopped, could not, if free from fault himself, recover as much as if he had gone on to full performance, without due interruption. The decisions on the contingent fee cases, if not the language of their opinions, indicate that the "abrogation" was not as total as it has been

since understood to be. Such a contract was not merely descriptive of the kind and extent of the agreed service, but it was also determinative and decisive in respect of the contingent compensation.

No case has been found where the reasonable value of part has been allowed to exceed the agreed value of the whole. The cases gathered in *Matter of Montgomery* (156 Misc. 583) indicate it necessarily is less in every case. As a matter of fact, the great contrast in this case was produced by the attorney making the contract at half rates, probably because he had just been paid $10,314 for services to the testator in his lifetime, and also foresaw that his future services would be required after the judicial settlement, because of the peculiar assets of this estate; but those motives do not take off anything from the fact that he placed his own valuation on his own work with full knowledge of all the circumstances.

Now, if those considerations are largely beside the point, and if the contract does not limit, nor control, the reasonable value of the performed part of the agreed work, what, if anything, else does? What better or other measure is there than the parties' own estimate? The ruling is couched in the language of an opinion in a contingent fee case, which held the basis of compensation could not legally be one dependent on the final outcome of the action under the contract, to wit: " After cancellation its terms no longer serve to establish the sole standard for the attorney's compensation. Together with other elements they may, however, be taken into consideration as a guide for ascertaining *quantum meruit.*" (*Matter of Tillman*, 259 N. Y. 133, 135.)

Even if no difference existed between the contingent retainer and the absolute one, still it may be asked, to what extent the terms of the contract may be taken into consideration? Certainly, as descriptive of the kind of work contemplated, and also as decisive of the result in respect of the ultimate contingent fee. Beyond that, the contract price is now apparently superseded by the standard of " reasonable value." A value is reasonable when a reason can be given for it; and unless the court falls back on some tangible reason, like market value, the decision would have to depend on mere whim or caprice. Here, in a summary proceeding before this court, exercising *ad hoc*, without jury, the delegated powers of the court of the enrollment of attorneys, this court might be presumed to know the market value of legal services hereabout, and might fix the value thereof without the aid of the excellent undisputed opinion evidence now in this record. (See *Winch* v. *Warner*, 186 App. Div. 710, 714.) Otherwise, if no proof of value were offered in an ordinary case, only a " nominal "

amount could be awarded (*Stein* v. *Jacovitz*, 138 Misc. 581; *Gill* v. *New York Cab Co.*, 48 Hun, 524); for the parties are said to lie " at the mercy of the court " when their agreement fails to make ascertainable the exact compensation to be paid. Under this rule, awards have been made for which no reason is apparent.

In the case at bar there is undisputed reliable evidence of the market value both of the unfinished fraction of the agreed work, and also of the portion that was performed. This testimony is not based on the contract rate, but generally on the practice and the published rates of the local bar which coincide substantially with the universal practice throughout the Union. The decision that now controls this issue is to the effect that the value of the part performed is not controlled or limited by the price agreed for the whole; and yet the terms of the contract have some influence. Apparently, this may be merely descriptive, but not decisive.

In the field of commercial contracts — so different from the unique case of an attorney's service contract — the decisions are not in accord in respect to the effect to be given the contract price in cases of part performance; but may be, perhaps, by contrast, of some value in the unique case in hand. The contract price has been held to be some evidence of value of part performance where illness prevented completion of the agreed work (*Casten* v. *Decker*, 42 Hun, 651; and see *Shirk* v. *Brookfield*, 77 App. Div. 295; *Boyd* v. *Vale*, 84 id. 414); and also where the suit was brought on an oral contract that was void under the " Statute of Frauds " (*Nightingale* v. *J. H. & C. K. Eagle, Inc.*, 141 App. Div. 386; revd. on dissenting opinion below, 205 N. Y. 628). Stronger language was used in a local case where the plaintiff rescinded for fraud and sued for the reasonable value of the part done. There the court said he might use the agreed amount of compensation as competent and sufficient evidence of his partial performance. (*Badger* v. *Scobell Chem. Co., Inc.*, 129 Misc. 612; affd., 222 App. Div. 712; affd., 247 N. Y. 587.) Again, the agreed price has been held to be strong, if not conclusive evidence of such reasonable value ( *United States* v. *U. S. Fidelity & Guaranty Co.*, 139 App. Div. 262); and it has even been said that " the price so specified then becomes the value " of the services when sued for in *quantum meruit*. (*Rubin* v. *Cohen*, 129 App. Div. 395, 397.)

Some of the older cases, however, declared that the contract price alone was not evidence of such value (*Lennon* v. *Smith*, 23 App. Div. 293), following a decision to the effect that the full contract price does not represent the reasonable value of the contract work (*Wyckoff* v. *Taylor*, 13 App. Div. 240), where

BARRETT, J., declared: " It is no evidence whatever of such value." On that theory, the proportionate contract value is condemned in *McAveney* v. *Pasquini* (23 App. Div. 120). There a subcontractor for excavation at defined rates was somewhat in default and laid his action in *quantum meruit*.

" He seems to have been contented with showing that the price named in the contract was $9,000 and that the whole work was completed, with the exception of about 500 yards * * * that the defendants had a contract with the State for doing the same work at $11,000, and had received payment of the entire amount. He claimed that the difference between the contract price and the amount left undone constituted the *quantum meruit*.

" This is an erroneous view of the law. * * * The difficulty with the proposition is that the payment by the State was not based on any certificate by the State Engineer as to the value of the work done by the defendants, but upon the proportionate amount of work done under the contract. This is not evidence as to the value. It might have been admissible evidence if the action had been brought for the contract price after the completion of the contract, but it is not evidence where the action is on *quantum meruit*. *Non constat* but that the contract price named in both contracts was excessive."

The State was not there complaining of any excessive charge; and one would suppose the parties by their contract had fixed the value irrevocably. Similarly, when it was said that recourse to the " agreement of retainer may prove to the attorney an extremely unjust guide for ascertaining his worth " (*Matter of Krooks*, 257 N. Y. 329, 332), one might well reply that such was precisely the risk that he took by binding himself in a contract of this unique sort. Even so, the rule should work both ways. The client in this case is the one to whom the present ruling will be unjust. It not only deprives her of her bargain, a contract at half rates, but it also severely penalizes her for exercising her legal right to interrupt performance. These observations on results seem to derive from an attempt to readjust the consideration of the contract as between the parties alone, in the face of the rule, almost as old as the concept of consideration itself, that courts should not enter into an inquiry as to the adequacy of the consideration, especially, where it is definitely stated in a written contract. (*Callophane Co. of New York* v. *Jaeckel & Co., Inc.*, 132 Misc. 693.)

In this confusion among the commercial cases, where the failure to complete stands unexcused, even though it be not substantial, the modern tendency seems to emphasize the factor of contract price even to the extent of identifying it with reasonable value.

This, *a fortiori*, should be the effect in the unique and distinct case now in hand where neither party is, in the least, at fault, and the *bona fide* interruption of performance was unquestionably legal, and was done pursuant and implicit part of the contract itself.

However, in obedience to the ruling of the Appellate Division, the value of the five-sixths of the agreed service herein must be determined on the basis of the value for which a reason can be given, in the light of all the circumstances of the case, without allowing the contract price to limit or control the amount. If the reasonable value were found to be $4,166.66, the finding might well be suspected to be a mere verbal subterfuge. If the finding were $2,000, or $7,500, no reason whatever in this record could be assigned for either figure. As stated above, there is no room here for any middle figure — unless it be a purely arbitrary or whimsical choice, little better than a mere guess — between the proportionate contract value of $4,166.66, that stands condemned, and the undisputed, reliable testimony to the fair market value of the part performed being worth $13,000 on considering generally all the circumstances of the case.